[No. A093061. First Dist., Div. Four. Mar. 19, 2002.]

LOCKHEED MARTIN CORPORATION et al., Petitioners, v. WORKERS' COMPENSATION APPEALS BOARD and VIRGINIA McCULLOUGH, Respondents.

1238

## COUNSEL

Finnegan, Marks & Hampton and Ellen Sims Langille for Petitioners.

Klein, Testan & Brundo and Richard M. Jacobsmeyer for California Workers' Compensation Institute as Amicus Curiae on behalf of Petitioners.

Vincent Bausano; Law Offices of Leon R. Reich and Leon R. Reich for Respondents.

Law Office of David Bryan Leonard and David Bryan Leonard for California Society of Industrial Medicine & Surgery, Inc., as Amicus Curiae on behalf of Respondents.

Capurro, Rocha & Walsh and Joseph V. Capurro for California Applicants' Attorneys Association as Amicus Curiae on behalf of Respondents.

## OPINION

**REARDON, J.—**

### INTRODUCTION

In this case we hold that the compensability threshold established by Labor Code section 3208.3, subdivision (b)(1)[1] applies to *any* claim for

---

[1] All further statutory references are to the Labor Code unless otherwise indicated.

psychiatric injury, whether or not it is related to a compensable physical injury. Employer Lockheed Martin Corporation (Lockheed) and its insurer, Bankers Standard Insurance Company (Bankers), petitioned for review of a decision of the Workers' Compensation Appeals Board (Board or WCAB) reversing the finding of a workers' compensation administrative law judge (WCJ) that employee applicant Virginia McCullough suffered no compensable psychiatric injury. We granted the petition and now reverse the Board's order in case No. WCK 32177.

## BACKGROUND

In 1986, while employed by General Electric (G.E.), McCullough sustained an admitted industrial injury to her left forearm and was awarded 35.5 percent permanent disability. In 1988, she filed another claim against G.E. alleging cumulative pulmonary and internal trauma (exposure to toxic chemicals), later adding an allegation of associated psychiatric injury. During the period ending April 1996, while employed by Lockheed, she sustained admitted cumulative injury to her right upper arm and neck and alleged additional psychiatric and internal injury (case No. WCK 32177).

The WCJ found: (1) McCullough had never sought to reopen her first claim, as to which she was not entitled to further temporary disability indemnity, and the evidence did not justify, on an industrial basis, medical treatment for her psychiatric condition; (2) she did not sustain injury to her pulmonary or internal organs, or to her psyche, arising out of and in the course of her G.E. employment; and (3) she *did* sustain injury to her right upper arm and neck at Lockheed (for which she was awarded 27.75 percent permanent disability and future medical treatment), but not to her psyche or internal organs. In particular, the WCJ found McCullough's aggravated psychological state did not satisfy the threshold of compensability established by section 3208.3, subdivision (b)(1),[2] which he ruled applicable to *all* psychiatric injuries, even those incurred as a consequence of a physical work injury.

McCullough petitioned for reconsideration, challenging, inter alia, the WCJ's interpretation of section 3208.3, which she asserted does not apply to

---

[2]This subdivision provides in its entirety, "In order to establish that a psychiatric injury is compensable, an employee shall demonstrate by a preponderance of the evidence that actual events of employment were predominant as to all causes combined of the psychiatric injury."

a psychiatric injury that is a compensable consequence of an orthopedic injury. In his report and recommendation on her petition, the WCJ discounted the precedential value of the Board panel decision on which McCullough relied, *Rebelo v. Washington Hospital* (1999) SJ 195868, 27 Cal. Workers' Comp. Rptr. 159 (*Rebelo*).

The Board granted reconsideration and reversed the WCJ's order with respect to the claims based on McCullough's 1986 and 1996 injuries, finding in each case that under *Rebelo*, she *did* sustain psychiatric injury as a compensable consequence of the admitted industrial physical injury. Accordingly, the Board awarded her further psychiatric care in both cases, and increased her permanent disability award to 34 percent in the latter. As to the alleged 1988 injury, reconsideration was denied. Lockheed and Bankers (hereafter collectively Lockheed) filed a timely petition for writ of review; G.E. did not.

## DISCUSSION

### A. *Statutory Construction*

■ "Although the WCAB's findings on questions of fact are conclusive [citation], the construction of a statute and its applicability to a given situation are matters of law that are reviewable by the courts." (*Rex Club v. Workers' Comp. Appeals Bd.* (1997) 53 Cal.App.4th 1465, 1470-1471 [62 Cal.Rptr.2d 393].) "The Board's administrative construction of statutes that it is charged to enforce and interpret is entitled to great weight unless it is clearly erroneous. [Citation.]" (*Ralphs Grocery Co. v. Workers' Comp. Appeals Bd.* (1995) 38 Cal.App.4th 820, 828 [45 Cal.Rptr.2d 197].) "An erroneous interpretation or application of law by the WCAB is a ground for annulment of [its] decision. [Citations.]" (*Rex Club, supra*, 53 Cal.App.4th at p. 1471.)

■ "The fundamental goal of statutory interpretation is to ' "ascertain the intent of the lawmakers so as to effectuate the purpose of the law." ' [Citations.]" (*Juran v. Epstein* (1994) 23 Cal.App.4th 882, 893 [28 Cal.Rptr.2d 588].) In determining legislative intent, courts must look first to the plain words of the statute, but statutes must also be construed in light of their historical background and evident objectives (*ibid.*), especially if the statutory language is ambiguous, i.e., susceptible of more than one reasonable

interpretation (*Granberry v. Islay Investments* (1995) 9 Cal.4th 738, 744 [38 Cal.Rptr.2d 650, 889 P.2d 970]). In general, the Legislature has directed us to construe workers' compensation laws "liberally . . . with the purpose of extending their benefits for the protection of persons injured in the course of their employment." (§ 3202.)

## B. *Section 3208.3*

"Labor Code section 3208.3 was enacted as part of the Margolin-Greene Workers' Compensation Reform Act of 1989. It is part of the Legislature's response to increased public concern about the high cost of workers' compensation coverage, limited benefits for injured workers, suspected fraud and widespread abuses in the system, and particularly the proliferation of workers' compensation cases with claims for psychiatric injuries." (*Hansen v. Workers' Compensation Appeals Bd.* (1993) 18 Cal.App.4th 1179, 1183-1184 [23 Cal.Rptr.2d 30] (*Hansen*), fn. omitted.) "The Legislature's expressed intent in enacting Labor Code section 3208.3 was to establish a new and higher threshold of compensability for psychiatric injury." (*Id.* at p. 1184, citing § 3208.3, subd. (c).) As originally enacted, therefore, subdivision (b) of the statute provided, "In order to establish that a psychiatric injury is compensable, an employee shall demonstrate by a preponderance of the evidence that actual events of employment were responsible for at least 10 percent of the total causation from all sources contributing to the psychiatric injury." (Stats. 1989, ch. 892, § 25, p. 3003.)

In 1991, section 3208.3 was amended to add subdivision (d), which provided that no compensation shall be paid for psychiatric injury resulting from a "regular and routine employment event" (including lawful personnel actions) unless the employee has been employed by the employer for at least six months. "The Legislature's apparent purpose in enacting subdivision (d) of section 3208.3 was to limit questionable claims for psychiatric injuries resulting from routine stress during the first six months of employment." (*Hansen, supra*, 18 Cal.App.4th at p. 1184.) As the *Hansen* court explained, this policy decision was based on the fact that a new employee is customarily on probation for the first six months of employment, during which time problems often occur which may "result in disciplinary action, resignation, or termination and lead to claims of psychiatric injury due to stress." (*Ibid.*) However, subdivision (d) also stated, "*Nothing in this section shall be construed to mean that there shall not be compensability for any psychiatric*

*injury which is related to any physical injury in the workplace.*" (Stats. 1991, ch. 115, § 4, p. 684, eff. July 17, 1991; italics added.)

In 1993, the Legislature again amended section 3208.3, increasing the causation requirement for work-related psychiatric injury from 10 percent to more than half. (See *ante*, fn. 2; *Department of Corrections v. Workers' Comp. Appeals Bd.* (1999) 76 Cal.App.4th 810, 815-816 [90 Cal.Rptr.2d 716] ["predominant as to all causes" means more than 50 percent].) At the same time, the italicized sentence quoted above was *deleted* from subdivision (d). (Stats. 1993, ch. 118, § 1, pp. 1225-1226.)

## C.   *The Board's Interpretation*

In *Bechtel Corporation & Industrial Indemnity Insurance Company v. Workers' Compensation Appeals Board* (1999) 64 Cal.Comp.Cases 661 (*Bechtel*), the Board affirmed a WCJ's ruling and declined to apply section 3208.3, subdivision (d)'s six-month employment provision to a 1994 claim of psychiatric injury as a compensable consequence of admitted industrial injuries to the claimant's back (as opposed to " 'an independent or separate psychiatric injury claim' ") absent specific language from the Legislature or any appellate authority. (*Bechtel*, at p. 662.) The Board did not believe the 1993 amendments had undermined the *Hansen* court's conclusion " 'that the overriding purpose and the focus of the Legislature in enacting that [s]ection was to eliminate questionable psychiatric claims arising from short-term employment exposure.' " (*Ibid.*) Division Three of this court denied the employer's writ petition. (*Id.* at p. 663.)

In *Rebelo, supra*, 27 Cal. Workers' Comp. Rptr. 159, the Board rescinded a WCJ's order and ruled that "the requirements of Labor Code section 3208.3 do not apply to a psychiatric injury that is alleged to be a compensable consequence of a [1996] physical industrial injury." (*Id.* at p. 160.) Despite the omission effected by the 1993 amendment of subdivision (d), the Board nonetheless "found it worthy of note that the Legislature did not disturb the long-standing rule of compensable consequences when it enacted § 3208.3." (*Rebelo*, at p. 159.) "Although the 'compensable consequence' doctrine has a long-standing foundation in workers' compensation law, the panel continued, compensable consequence injuries are nowhere described in § 3208.3. Nor were compensable consequences the subject or focus of the amendments to the statute that were directed to reducing or eliminating psychiatric claims due to stress arising from employment exposure. That is,

the legislature was focused on psychiatric injuries resulting from employment events as opposed to the compensable consequences of an admitted physical injury. Thus, the panel was not persuaded that the deleting of the last sentence of § 3208.3(d) in 1993 was intended to do away with the compensability of psychiatric consequences of a physical injury." (*Id.* at pp. 159-160.)

There was apparently no appellate review of *Rebelo*, but the Board expressly followed its rationale in two other "writ denied" cases. First, in *Circle K. Corporation, Travelers Insurance Company v. Workers' Compensation Appeals Board* (1999) 65 Cal.Comp.Cases 64 (*Circle K*), the WCJ ruled the applicant's claimed psychiatric injury was a compensable consequence of an admitted 1996 industrial injury to her head, neck and shoulder. He found that section 3208.3, subdivision (b)(1) did not apply and, in the alternative, that the opinion of the qualified medical examiner justified a finding that the applicant's psychiatric injury was, in fact, predominantly caused by her admitted physical injury. (*Circle K*, at p. 65.) In granting reconsideration, the Board adopted and incorporated the WCJ's analysis and reiterated the *Rebelo* panel's conclusion that the Legislature's focus in enacting section 3208.3 was on reducing or eliminating stress claims "arising from the very brief exposure window in the initial stage of employment." (*Circle K*, at p. 65.) Alternatively, if a compensable-consequence psychiatric injury *is* governed by the statute, the precipitating orthopedic injury constitutes " 'an "actual event of employment" ' " within the meaning of subdivision (b)(1). (*Circle K*, at p. 65.)

Finally, in *County of Monterey, PSI, Helmsman Management Services v. Workers' Compensation Appeals Board* (2000) 65 Cal.Comp.Cases 853 (*Monterey*), the applicant suffered a bilateral wrist injury in 1994. The psychiatric evaluator apportioned 60 percent of her psychiatric injury to the industrial injury, assuming the loss of medical insurance resulting from her absence from work was a compensable consequence of the wrist injury. If not, he apportioned 50 percent of the psychiatric injury to industrial factors. The WCJ found the loss of insurance was *non*industrial, and 50 percent industrial causation did not meet the statutory threshold. The Board granted reconsideration and rescinded the WCJ's finding based on " 'the principle of compensable consequences, as applied in the *Rebelo* and *Bechtel* cases' " (*id.* at p. 855), i.e., section 3208.3 does not apply to a claim of psychiatric disability resulting from physical industrial injury.

Thus, in the absence of appellate guidance, various panels of the Board have consistently taken the same position on this issue for over two years.[3] Nevertheless, in the case before us, the WCJ characterized *Rebelo* as "only a panel decision of the appeals board not entitled to much weight" and concluded from "the sequence of legislative changes in the language of § 3208.3" that the Legislature "intended to raise the standard for all psychiatric injuries, even those incurred as a consequence of a physical injury." He noted that *Circle K*'s "value as precedent is low" because there the applicant's physical injuries were indeed the predominant cause of her psychiatric injury. He was not familiar with *Monterey*. In reversing the WCJ, the Board repeated its statement in *Rebelo* that "the 'predominant cause' threshold does not apply to a psychiatric condition which is a compensable consequence, regardless of the date of injury. 'Compensable consequence injuries are nowhere described in § 3208.3.' [Citation.]"

## D. *Resolution*

Until now, there has been no appellate authority on this issue. We are not bound by either Board panel decisions such as *Rebelo*, or writ denied cases such as *Bechtel, Circle K*, and *Monterey*.[4] (*Smith v. Workers' Comp. Appeals Bd.* (2000) 79 Cal.App.4th 530, 537, fn. 2 [94 Cal.Rptr.2d 186].) The language of section 3208.3, subdivision (b)(1) clearly and unambiguously refers to the compensability of a "psychiatric injury," without any exceptions. The Legislature undoubtedly knows how to enact an exception as it did in 1991, and the fact that it later deleted that exception would

---

[3]It was not always thus, however. In at least two writ denied cases, the Board *did* apply section 3208.3 to compensable-consequence psychiatric injuries. In *Shannon v. Workers' Compensation Appeals Board* (1997) 62 Cal.Comp.Cases 1462 (*Shannon*), it ruled that a psychiatric injury arising from a 1992 industrial foot injury did not satisfy the statute's threshold of compensability. Even though the applicable version of subdivision (d) contained the later-deleted language *excluding* psychiatric compensable consequences claims from the section's purview, the Board "was not persuaded that [subdivision] (d) invalidated the higher threshold of compensability set forth in subdivisions (b) and (c), *because that would defeat the purpose of the statute.*" (*Shannon, supra,* 62 Cal.Comp.Cases at p. 1464, italics added.) Similarly, in *Evans v. Workers' Compensation Appeals Board* (1998) 63 Cal.Comp.Cases 443, the WCJ ruled in the applicant's favor and the Board reversed, but both apparently applied the statutory threshold (then 10 percent) to the causal nexus between the applicant's June 1991 (before the addition of subdivision (d)) foot injury and his subsequent suicide attempt.

[4]The case of *United Airlines, Inc., Alexsis Rick Management v. Workers' Compensation Appeals Board* (1997) 62 Cal.Comp.Cases 1180, cited by amicus curiae California Applicants' Attorneys Association (CAAA), does not fall squarely into this category. Although the term "compensable consequence" was used, the issue was not the applicability of section 3208.3, subdivision (b)(1)'s causation threshold. Rather, the question was whether the applicant's psychiatric injury was the result of an orthopedic injury or a personnel action governed by section 3208.3, subdivision (h).

appear determinative.[5] "When the Legislature deletes an express provision of a statute, it is presumed that it intended to effect a substantial change in the law. [Citation.]" (*Royal Co. Auctioneers, Inc. v. Coast Printing Equipment Co.* (1987) 193 Cal.App.3d 868, 873 [238 Cal.Rptr. 538].)

Lockheed submits that this is the only reasonable interpretation of the statute as it has evolved through successive amendments but, acknowledging that "those with opposing viewpoints often interpret the same plain language in different ways," requests judicial notice (Evid. Code, § 452) of selected documents furnished by the Legislative Intent Service. Exhibit H to the petition contains materials relating to the 1993 amendments, specifically, excerpts of 4 of the 51 documents the service sent Lockheed's attorney. Lockheed claims these materials demonstrate that insurance industry "concerns" about the proposed amendment led to deletion of section 3208.3, subdivision (d)'s previous exemption, that the Legislature expressly intended the increased threshold of compensability to apply to all psychiatric claims, not just " 'mental-mental,' "[6] and that a different but related Assembly bill provided for psychiatric injury resulting from aggravation of physical injury to be governed by the "predominant cause" provision.

We need not tarry over the propriety of judicial notice or the reliability of Lockheed's scant documentation as evidence of legislative intent, since it adds almost nothing that is not evident from the mere deletion of section 3208.3, subdivision (d)'s last sentence. Neither McCullough nor her amici curiae (see *post*, at pp. 1247 & 1248) have directed us to, nor have we independently found, any evidence whatever in the legislative history of

---

[5]Of course, the Legislature does not always choose its words as carefully as it might. For example, the fact that the provision at issue here (*ante*, at p. 1243, italicized sentence) appears at the end of section 3208.3, subdivision (d), rather than as a separate subdivision, makes one wonder whether the Legislature meant that nothing in this *subdivision* (i.e., subdivision (d) regarding the six-month employment requirement) changes the rules in "compensable consequences" psychiatric injury cases, rather than "[n]othing in this *section*," as it says. If that were the case, consequential psychiatric injury would always have been subject to subdivision (b)'s causation threshold, though for at least a few years, not to the six-month requirement. To confuse matters a bit more, the penultimate sentence of subdivision (d), as originally enacted, provided, "Nothing in this *subdivision*" is meant to undermine the exclusive remedy doctrine. (Italics added.)

[6]"There are three general types of psychological injury related to employment: (1) physical injury producing psychic trauma or symptoms not physiologically verifiable [physical-mental]; (2) psychic trauma producing physical injury [mental-physical]; and (3) psychic trauma producing psychological injury [mental-mental]." (1 Hanna, Cal. Law of Employee Injuries and Workers' Compensation (rev. 2d ed., Tancor, edit., 2001) Psychoneurotic and Emotional Injuries, § 4.69[1], pp. 4-92 to 4-93, fn. omitted (Hanna).)

the 1993 amendments to section 3208.3 supporting the conclusion that the Legislature did not mean to repeal the previous exception by that deletion.[7]

Nor have we been offered any convincing arguments for the Board's interpretation. McCullough suggests the Legislature deleted the exclusionary language because it was redundant, since section 3208.3, by definition, *never* applied to compensable consequences cases. But she offers no authority for any legally meaningful distinction between the "psychiatric component" of a physical injury, as she now styles it, and the "psychiatric injury" referred to in both the statute and the Board's compensable consequence decisions on which she relies. CAAA asserts that "psychiatric injury" is a term of art referring *not* to the "psychiatric sequela[e]" of physical injuries, but *only* to the initial determination of exclusively emotional harm generally arising out of work-related stress. Section 3208.3, subdivision (a), however, defines a compensable psychiatric injury as "a mental disorder which causes disability or need for medical treatment" and is diagnosed in accordance with pre-scribed criteria. As McCullough notes, this definition has remained sub-stantially unchanged. The cases on which CAAA relies (*Cole v. Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148 [233 Cal.Rptr. 308, 729 P.2d 743]; *Hart v. National Mortgage & Land Co.* (1987) 189 Cal.App.3d 1420 [235 Cal.Rptr. 68]; *Livitsanos v. Superior Court* (1992) 2 Cal.4th 744 [7 Cal.Rptr.2d 808, 828 P.2d 1195]) do not support its contention. These cases established that emotional distress claims based on alleged misconduct that is a normal part of the employment relationship come within the exclusive remedy provisions of the workers' compensation law (§§ 3600, 3601), which preclude civil suit. And this is true, regardless of whether related physical injury is alleged or not.

McCullough also argues the Legislature may have deleted the final sen-tence of section 3208.3, subdivision (d) because it was redundant in that

---

[7]It is worth noting that the 1993 amendment, which deleted the language excluding compensable consequence cases from the purview of section 3208.3, also added subdivision (b)(2), which provides: "Notwithstanding paragraph (1) [predominant as to all causes], in the case of employees whose injuries resulted from being a victim of a violent act or from direct exposure to a significant violent act, the employee shall be required to demonstrate by a preponderance of the evidence that actual events of employment were a substantial cause of the injury." Substantial cause is defined as "at least 35 to 40 percent of the causation from all sources combined." (§ 3208.3, subd. (b)(3).) In a situation where a violent act against an employee results in physical injury and consequent psychiatric injury, subdivision (b)(2) thus indicates that compensable consequences cases are *not* beyond the statute's reach. It is reasonable to infer that in 1993, the Legislature decided no longer to exempt *all* compensable-consequences psychiatric injury cases from the causation threshold requirement, but to lower that threshold slightly for cases in which the precipitating physical injury was the result of workplace violence.

"once the exclusion was established in the 1991 version, it did not have to remain in the statute." One shudders to think of the effect of such an approach on the whole of California's statutory law.

Amicus curiae California Society of Industrial Medicine & Surgery, Inc. (CSIM&S), asserts that the doctrine of compensable consequences "encompasses" the concept of predominant cause; that is, the "but for" test mentioned in *Brock v. Workers' Compensation Appeals Board* (1999) 64 Cal.Comp.Cases 86, 87, and *Shannon, supra,* 62 Cal.Comp.Cases at page 1464—Would the injury have occurred but for the defendant's conduct?—is more stringent than section 3208.3's causation threshold. This assertion cannot withstand scrutiny. According to the cited authority, the "but for" rule was one of two tests for establishing "cause in fact," a concept "included in the term proximate cause." (*Mitchell v. Gonzales* (1991) 54 Cal.3d 1041, 1049 [1 Cal.Rptr.2d 913, 819 P.2d 872].) ■ "The tort concept of proximate causation," however, "is not followed in workers' compensation. [Citation.] Instead, the causal connection between employment and the injury is sufficient if the employment is a contributing cause of the injury. [Citations.]" (*Guerra v. Workers' Comp. Appeals Bd.* (1985) 168 Cal.App.3d 195, 199 [214 Cal.Rptr. 58]; see also *Rebelo, supra,* 27 Cal. Workers' Comp. Rptr. at p. 159.) "Since the legislature expressly declared an intent to establish a new and higher threshold, *the 10 percent threshold* must be greater than the previous threshold for compensability. Prior law required as a threshold that the industrial component in the causation of psychiatric injuries . . . be [inter alia] that 'but for' the work stress, the injury would not have occurred." (Hanna, *supra,* § 4.02[3][c], p. 4-21, italics added, fns. omitted.) According to Hanna then, the "predominant cause" threshold is appreciably higher than that required to establish "but for" causation.

And logically, how could it be otherwise? If, as CSIM&S asserts, the compensable consequence doctrine imposed a *higher* burden on the injured employee than the statute, the Board would not have found that although McCullough did not establish "predominant cause," she did meet the compensable consequence requirement. Nor would employers like Lockheed challenge Board decisions employing the compensable-consequence test.

Finally, the fact that the statute may have a "devastating effect" on some honest claimants does not show the Legislature did not mean what it said. ■ " 'This court has no power to rewrite the statute so as to make it conform to a presumed intention which is not expressed. [Citations.]' " (*California Teachers Assn v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 633 [59 Cal.Rptr.2d 671, 927 P.2d 1175].)

Thus, CAAA's policy concerns, expressed in a parade of horribles—delay or denial of benefits, delay in employees' return to work, litigation explosion, increased claims costs, increased strain on government benefit programs, defense solicitation of "bought" medical opinions—are better addressed to the Legislature.

■ We conclude that at least since the 1993 amendment, a "compensable consequence psychiatric injury" is governed by section 3208.3, and the precipitating physical injury constitutes an "actual event[] of employment" within the meaning of subdivision (b)(1). That is, a consequential psychiatric injury is compensable if and only if it is more than half attributable to a physical industrial injury. Despite the Board's repeated contrary rulings (none of which has been reversed *or* affirmed by an appellate court) *and* the undeniable fact that the Legislature was aiming *primarily* at phony stress claims, especially those filed by disgruntled short-term former employees—see, e.g., subdivision (e) (additional conditions for compensation based on psychiatric claims filed after notice of termination or layoff) and the Governor's comment that "[t]his legislation marks the beginning of the end for the stress-mill millionaires" (quoted in *Sakotas v. Workers' Comp. Appeals Bd.* (2000) 80 Cal.App.4th 262, 273 [95 Cal.Rptr.2d 153])—the fact remains that we can imagine no other logical explanation for the 1993 deletion of the exclusionary language of subdivision (d). As amicus curiae California Workers' Compensation Institute puts it, "There is no rational basis for arguing that the alteration of statutory language is inconsequential, irrelevant, or meaningless." Moreover, the potential for fraud and the problems inherent in psychiatric claims, "notably vagueness in defining the injury and problems of establishing industrial causation and apportionment" (*Hansen, supra,* 18 Cal.App.4th at p. 1184), exist no less because the alleged psychiatric injury is related to a physical injury.[8]

CONCLUSION AND DISPOSITION

The WCJ correctly ruled that Labor Code section 3208.3 applies to all claims of psychiatric injury, including those resulting from physical work injuries, and the Board erred in reversing this ruling. Therefore, the Board's October 2, 2000 opinion and order granting reconsideration and decision after reconsideration are reversed and the matter remanded to the Board with instructions to issue a new and different order in case No. WCK 32177

[8]CSIM&S asserts that in any event, 60 percent of McCullough's psychiatric injury was caused by her physical injury, and therefore, even if section 3208.3 *does* apply, she satisfied its causation threshold. We have carefully reviewed the record, particularly the November 18, 1998 report of psychiatrist Roy L. Curry and the Board's discussion thereof, and concluded it does not support the contention.

consistent with our opinion herein. McCullough's request for a supplemental award of attorney fees (§ 5801) is denied. Petitioners are awarded costs on appeal. (Cal. Rules of Court, rule 26(a).)

Kay, P. J., and Sepulveda, J., concurred.

The petition of respondent Virginia McCullough for review by the Supreme Court was denied June 19, 2002. Kennard, J. and Chin, J., did not participate therein.