Filed 5/1/13

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----


| | |
|---|---|
| COUNTY OF SACRAMENTO, | C067739 |
| Petitioner, | WCAB Case No. ADJ1898181 |
| v. | (SAC 0367383) |
| WORKERS' COMPENSATION APPEALS BOARD and MICHAEL BROOKS, | ORDER MODIFYING OPINION [NO CHANGE IN JUDGMENT] |
| Respondents. | |


THE COURT:


It is ordered that the opinion filed herein on April 22, 2013, be modified as follows:

1. Delete the first two paragraphs of the opinion and replace with the following:

A worker's psychiatric injury is not compensable if it was substantially caused by a personnel action -- that is, if 35 to 40 percent of the cause is a personnel action. (Lab.

Code, § 3208.3)[1]  In this workers' compensation case, the worker, respondent Michael Brooks, is a supervising probation officer.  Another probation officer filed a complaint with the union alleging wrongdoing by Brooks, which triggered an internal affairs investigation by the employer, petitioner County of Sacramento.  Brooks sustained an injury to his psyche and sought workers' compensation benefits.  A psychiatrist was appointed as the agreed medical evaluator, and she concluded that Brooks's injury was caused equally (one-third each) by (1) the coworker's complaint (which the parties agree *was not* a personnel action), (2) the internal affairs investigation (which the parties agree *was* a personnel action), and (3) Brooks's feelings of not being supported by his superiors (which the parties dispute was a personnel action).  Respondent Workers' Compensation Appeals Board accepted the psychiatrist's opinion that Brooks's feelings of not being supported by his superiors was not caused by a personnel action and awarded compensation because, under that view of the evidence, the personnel action was only 33.3 percent of the cause of the injury, just short of the 35-percent threshold for noncompensation.

The record does not support the opinion of the psychiatrist (who had no authority to determine what a personnel action is) and the Board (which failed to consider the cause of Brooks's feelings of not being supported by his superiors) that the personnel action was only 33.3 percent of the cause of the injury to Brooks's psyche.  The psychiatrist testified that at least part of Brooks's feelings of not being supported by his superiors was caused by actions taken by those superiors in connection with the internal affairs investigation.  Therefore, the record does not support the conclusion that a personnel action did not cause any part of Brooks's feelings of not being supported by his

---

[1]    Hereafter, unspecified code citations are to the Labor Code.

superiors.  Because the Board's decision is not supported by substantial evidence, we annul and remand to the Board for further proceedings.[2]

       2.  Delete the first two words of the last paragraph on page two, "Respondent Michael".

       3.  On page four, delete "On appeal," from the first paragraph under the heading DISCUSSION so that the paragraph begins, "The County contends".

       This modification does not change the judgment.


THE COURT:


         _____RAYE_____, P. J.


         _____NICHOLSON_____, J.


         _____HOCH_____, J.

---

[2]    The question presented here is whether the causes of Brooks's psychiatric injury were personnel actions.  The parties do not dispute whether those actions were lawful, nondiscriminatory, and taken in good faith.  With that understanding, we refer to the defense under section 3208.3, subdivision (h) as the "personnel action defense" because it is unnecessary to be more specific.

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----


| | |
|---|---|
| COUNTY OF SACRAMENTO, | C067739 |
| Petitioner, | WCAB Case No. |
| | ADJ1898181 |
| v. | (SAC 0367383) |
| WORKERS' COMPENSATION APPEALS BOARD and MICHAEL BROOKS, | |
| Respondents. | |


ORIGINAL PROCEEDING; petition for writ of review from a decision of the Workers' Compensation Appeals Board. Annulled and remanded.

Hanna, Brophy, MacLean, McAleer & Jensen and Elizabeth S. Trimm for Petitioner.

Neil P. Sullivan and James T. Losee for Respondent Workers' Compensation Appeals Board.

Tweedy, Penney & Crawford, Tweedy, Penney & Company, and Douglass F. Penney for Respondent Michael Brooks.


1

A worker's psychiatric injury is not compensable "if the injury was substantially caused by a lawful, nondiscriminatory, good faith personnel action." (Lab. Code, § 3208.3, subd. (h).)[3] In this case, the worker sustained a psychiatric injury after encountering trouble at work. An agreed medical evaluator concluded that the injury was not substantially caused by personnel actions, and the Workers' Compensation Appeals Board (Board) awarded compensation. However, the factual basis of the evaluator's opinion, as revealed in her reports and deposition, do not constitute substantial evidence supporting her conclusion that the worker's injury was not substantially caused by personnel actions. We therefore annul the award and remand to the Board for further proceedings.

The question presented here is whether the causes of Brooks's psychiatric injury were personnel actions, not whether those actions were lawful, nondiscriminatory, and taken in good faith. With that understanding, we refer to the defense under section 3208.3, subdivision (h) as the "personnel action defense" because it is unnecessary to be more specific.

FACTS AND PROCEDURE[4]

Respondent Michael Brooks started working as a supervising probation officer at the County's juvenile hall in 2007, and was apprised of a pending lawsuit alleging use of excessive force by the officers there. He observed problems he believed bordered on violation of protocols and felt that the Security Emergency Response Team (SERT), which he supervised, resisted and undermined his authority and supervision.

---

[3] Hereafter, unspecified code citations are to the Labor Code.

[4] The Board adopted the factual findings of the workers compensation judge. Those findings are reflected in this summary. Additional procedure and evidence, especially with respect to the causation issue, are discussed in connection with the contentions of the County of Sacramento (the County).

2

In November 2007, Brooks counseled two of the SERT officers as a result of an incident with a ward. Brooks informed his supervisor that the SERT officers resisted his instructions concerning restraining and movement of wards.

On December 14, 2007, Assistant Chief Deputy John O'Brien met with Brooks and gave him a memo entitled "Admonition & Notice of Internal Affairs Investigation."

Concerning the memo and Brooks's response, the workers' compensation judge (WCJ) stated:

"The memo advised [Brooks] of the allegations by Ron Parker, a [SERT] member, which formed the basis of the internal affairs investigation. The memo directed [Brooks] to refrain from any supervisory duties which involve Ron Parker, refrain from abusive and or indiscreet language toward Ron Parker, and refrain from any other actions that could reasonably be construed as an attempt to intimidate or threaten Ron Parker. [Brooks] believed that these directives were unreasonable when it was his job to supervise Ron Parker. [Brooks] believed that with these directives he would not be able to intervene in an emergency.

"[Brooks] asked to be reassigned or placed on administrative leave pending completion of the investigation. [Brooks's] requests were denied. [Brooks] did not feel that the Chiefs listened to his concerns or provided a reasonable alternative. However, the employer allowed [Brooks] to change his shifts to reduce contact with Ron Parker. [Brooks] went to work on January 2, 2008 and saw that Ron Parker was scheduled to work. [Brooks] was too upset to work and filed a claim."[5]

Psychiatrist Ann E. Allen, M.D., the agreed medical evaluator, diagnosed Brooks with adjustment disorder with depressed and anxious moods. Dr. Allen expressed her

---

[5] On the claim form filled out by Brooks on January 2, 2008, Brooks described his injury as follows: "Undue stress due to IAD investigation of allegations and shift change under duress."

3

opinion that the following factors caused Brooks's disorder:[6] (1) Parker's complaint, (2) the internal affairs investigation, and (3) Brooks's feelings that his supervisors were not supporting him.

In response to Brooks's claim for injury to his psyche, the County denied liability, arguing that his claim was barred by the personnel action defense of section 3208.3. A WCJ issued a decision in Brooks's favor, but the Board rescinded the decision and returned the matter to the trial level for further development of the record.

After further development of the record, the WCJ again issued a decision in Brooks's favor. The Board affirmed the WCJ's decision, with one dissenting commissioner.

The County filed a petition for writ of review, and we order issuance of the writ.

DISCUSSION

On appeal, the County contends that Dr. Allen's reports and testimony do not constitute substantial evidence that the County's personnel actions were not a substantial cause of Brooks's psychiatric injury. According to the County, the evidence does not support Dr. Allen's attempt to apportion the injury to the various causes. We agree.[7]

A.    *Personnel Action Defense*

" 'Labor Code section 3208.3 was enacted as part of the Margolin-Greene Workers' Compensation Reform Act of 1989. It is part of the Legislature's response to increased public concern about the high cost of workers' compensation coverage, limited benefits for injured workers, suspected fraud and widespread abuses in the system, and

---

[6]    As will be seen, Dr. Allen's opinion concerning causation evolved over time. At first, it was not nearly as clear as we present it in this paragraph.

[7]    We solicited supplemental briefing concerning whether Parker's complaint was a personnel action. However, the County changed its earlier position on this issue and agreed with the Board and Brooks that Parker's complaint cannot be deemed a personnel action. Therefore, we do not discuss this issue and express no opinion as to its merits.

4

particularly the proliferation of workers' compensation cases with claims for psychiatric injuries.' [Citation.]" (*Lockheed Martin Corp. v. Workers' Comp. Appeals Bd.* (2002) 96 Cal.App.4th 1237, 1242 (*Lockheed*).) " 'The Legislature's expressed intent in enacting Labor Code section 3208.3 was to establish a new and higher threshold for compensability for psychiatric injury.' [Citations.]" (*Lockheed, supra,* at p. 1242; § 3208.3, subd. (c).) To further this more restrictive policy, subdivision (h) provides: "No compensation under this division shall be paid by an employer for a psychiatric injury if the injury was substantially caused by a lawful, nondiscriminatory, good faith personnel action. The burden of proof shall rest with the party asserting the issue." " '[S]ubstantial cause' means at least 35 to 40 percent of the causation from all sources combined." (§ 3208.3, subd. (b)(3).)

A personnel action has been defined as conduct attributable to management in managing its business, including such things as reviewing, criticizing, demoting, transferring, or disciplining an employee. (*Larch v. Contra Costa County* (1998) 63 Cal.Comp.Cases 831, 833-839; *Stockman v. State of California/Department of Corr.* (1998) 63 Cal.Comp.Cases 1042, 1044-1047.) "An employer's disciplinary actions short of termination may be considered personnel actions even if they are harsh and if the actions were not so clearly out of proportion to the employee's deficiencies so that no reasonable manager could have imposed such discipline. [Citation.]" (*Larch v. Contra Costa County, supra,* 63 Cal.Comp.Cases at p. 833.) "It is unnecessary, moreover, that a personnel action have a direct or immediate effect on the employment status. Criticism or action authorized by management may be the initial step or a preliminary form of discipline intended to correct unacceptable, inappropriate conduct of an employee. The initial action may serve as the basis for subsequent or progressive discipline, and ultimately termination of the employment, if the inappropriate conduct is not corrected." (*Id*. at pp. 834-835.) What constitutes a personnel action depends on the subject matter and factual setting for each case. (*Id*. at p. 833.)

5

Whether there has been a psychiatric injury must be established by expert medical opinion. (*Rolda v. Pitney Bowes, Inc.* (2001) 66 Cal.Comp.Cases 241, 245.) However, "the WCJ must then decide whether any of the actual events of employment [that caused the psychiatric injury] were personnel actions, and if so, whether any of them were lawful, nondiscriminatory, good faith personnel actions. These are factual/legal issues for the WCJ to determine." (*Id.* at p. 246.)

B.    *Specific Facts and Procedure Relating to Personnel Action Defense*

Brooks was first interviewed by Dr. Allen, the agreed medical evaluator, on October 29, 2008, more than 10 months after the injury. After the interview, Dr. Allen prepared a report, addressing causation only generally: "Lacking evidence of pre-existing psychiatric problems to explain his recent emotional changes, his description of feeling undermined as a supervisor and unsupported by his superiors regarding an employee's grievance would be sufficient precipitants for the development of emotional difficulties."

Dr. Allen also stated in her report: "At this point, there were no particular personnel acts such as being placed on a paid leave of absence or other circumstances that contributed substantially to the development of emotional difficulties. Thus, if his employers' actions are found to not be in good faith, then his psychiatric claim would be compensable."[8]

The County asserted that the personnel action defense precluded an award.

Dr. Allen did not testify at the May 19, 2009, hearing before the WCJ, but her report was admitted into evidence. In his decision, dated August 4, 2009, the WCJ stated that he found Dr. Allen's report persuasive. The decision noted that the internal affairs investigation and the changes made to Brooks's shifts were personnel actions; however,

---

[8]    As will be seen, Dr. Allen's apparent contradictions and misunderstanding of the law caused the Board to remand for further evidence after the first decision of the WCJ.

the WCJ concluded that the County "failed to meet [its] burden of proof establishing that a personnel action was a substantial cause of the psychiatric injury."

The Board rescinded the August 4, 2009, decision and remanded the case for further development of the record with respect to the personnel action defense. The Board noted:

"The WCJ's decision was based on his finding that Dr. Allen did not address whether the employer's lawful, nondiscriminatory, good faith personnel actions were a substantial cause of [Brooks's] psychiatric injury. However, Dr. Allen did, in fact, address this issue stating, '[a]t this point, there were no particular personnel acts such as being placed on a paid leave of absence or other circumstances that contributed substantially to the development of emotional difficulties. Thus, if his employer's actions are found to not be in good faith, then his psychiatric claim would be compensable.' Yet, while Dr. Allen addressed this issue and in light of the totality of her report, the statement is ambiguous and does not clearly answer the question 'whether the lawful, nondiscriminatory, good faith personnel actions were a "substantial cause" of the psychiatric injury' . . . ."

Meanwhile, even before the Board had rescinded the WCJ's decision, Dr. Allen issued a supplemental report at the request of the County addressing again the issue of causation. In this supplemental report, dated August 3, 2009, Dr. Allen stated: "It would be my opinion that Mr. Brooks['s] psychiatric disorder was predominately caused by the internal affairs investigation was for the complaint, grievance, and shift change in directive of the supervisor. [*Sic.*] [¶] Based on the evidence to date, Mr. Brooks felt undermined as a supervisor and unsupported by his superiors regarding an employee's grievance. The investigation concerning the grievance as well as the grievance itself contributes substantially to causation of the injury."

Dr. Allen concluded: "In terms of apportionment of causative factors, the employee's grievance would contribute one-third to the development of psychiatric

7

injury, the investigation would contribute one-third to the development of psychiatric injury, and his feelings that he was unsupported by his supervisors would contribute one-third to the development of psychiatric injury in this case. Hopefully, this clarifies any matters[,] and determination of compensability may ultimately be left to the trier of fact in this case."

Counsel for the County and for Brooks deposed Dr. Allen on April 8, 2010. The focus of the deposition was on what the several causes of Brooks's injury were and how Dr. Allen assigned fractions of causation to each of those causes.

Concerning the separation of the internal affairs investigation as a cause and Brooks's feelings of not being supported by his supervisors as a separate cause, Dr. Allen testified as follows:

"[Counsel for County:] So when you say that [Brooks] had a lack of support from the supervisors, is that relating still to the internal affairs matter, the investigation, the directive of not supervising the shift change?

"[Dr. Allen:] I think that it *also* had to do with some other circumstances surrounding the situation.

"[Counsel for County:] What situation?

"[Dr. Allen:] Let's see. Let me make sure I completed it. Well, he said that he had sent e-mails to his supervisor, Martin, about the problems he was having with feeling that [Parker] was trying to supersede his authority and make decisions that he should not have been making and acting towards him in a disrespectful manner. And, let's see, so that was -- he said that that was -- I assume that that was -- that had occurred before the first counseling meeting, and he hadn't heard anything back. [¶] . . . [¶]

"[Dr. Allen:] . . . I think there was one other part of that too, about feeling unsupported, that he said that he had gone to his immediate supervisor because he felt like the security team was resisting supervision. But it didn't resolve the situation." (Italics added.)

8

During the deposition, Dr. Allen expressed confusion about the facts of the case. She expressed her opinion that Brooks's being placed on administrative leave alone was not a substantial cause of Brooks's injury. However, Brooks was never placed on administrative leave.

Again attempting to describe the third part of the causation relating to Brooks's feelings of not being supported by his supervisors, Dr. Allen testified: "And he definitely felt like his supervisors or superiors were not on his side or were not sympathetic to his version of events and hadn't responded when he was concerned about that. That is the way he related." And later, she testified: "I believe that a lot of when he felt unsupported by his superiors occurred when they told him about the complaint."

Dr. Allen added that Brooks felt his supervisors were unreasonable "about not supervising [Parker] any longer." She said that "when [Brooks] tried to talk to them about how this wouldn't be possible in performing his job, that he felt that they were -- they acted in a way that didn't acknowledge his side or his perspective or his concern about remaining in a supervisory status. So that is how he perceived it."

After this testimony, Dr. Allen tried to explain that this feeling that Brooks had that his supervisors were being unreasonable about Brooks supervising Parker was not part of his feelings of not being supported. Instead, Dr. Allen had separated those feelings out as having to do only with the investigation. When counsel for the County observed that the directive was part of the County's response to the complaint and the initiation of the internal affairs investigation, Dr. Allen replied: "Well, no doubt it is all interrelated. I think that is what makes it hard for figuring out what are percent causations in these kinds of cases."

The case, with this new evidence, was again submitted to the WCJ, and the WCJ again awarded compensation, finding that the personnel action defense did not apply because the internal affairs investigation was not a substantial cause (at least 35 percent) of the injury.

9

The County argued to the WCJ that Brooks's feelings of not being supported by his supervisors was not a causal event but instead were Brooks's reactions to the events. The County claimed those feelings were caused by the events surrounding the internal affairs investigation and, therefore, were the result of a personnel action. The WCJ rejected this argument, noting that some of the feelings arose from the beginning of Brooks's employment at juvenile hall when he reported excessive force and other problems that his supervisors did not believe were occurring. Since this lack of support preceded the complaint and internal affairs investigation, they were not part a personnel action.

The WCJ concluded: "It was found that [the County] failed to establish, with competent medical evidence, that the personnel actions (the investigation and shift change) were a substantial cause of the psyche injury. Though [the County] argues that a fair and full review of the evidence would support a finding that the personnel actions were a substantial cause, [the County] does not specifically point to a medical opinion that substantiates their [*sic*] position."

In its opinion and decision after reconsideration, the Board concluded that, of all events that caused Brooks's injury, only the internal affairs investigation was a personnel action. Since that investigation accounted for only one-third of the causation, in Dr. Allen's opinion, it was not a substantial cause of Brooks's injury and the personnel action defense was inapplicable.

The Board further explained: "While [the County] argues that some aspects of Parker's grievance and some aspects of his feelings of being unsupported by his supervisors cannot be separated from the internal investigation and that these combine to meet the 35% threshold for substantial cause, this argument is not supported by the record. Furthermore, the issue of whether lawful, nondiscriminatory, good faith personnel actions are a substantial cause of a psychiatric injury requires medical evidence. (*Rolda, supra,* 66 Cal.Comp.Cases at p. 247.)"

10

The Board continued: "In her August 9, 2009 report, Dr. Allen stated, 'personnel acts of being placed on a paid leave of absence and the criticisms pertaining [to] his performance evaluation were not substantially related to the development of emotional difficulties.' In her deposition, Dr. Allen testified that the investigation by itself was not a substantial cause [citation], that she could not say that the investigation alone would not have caused a psychiatric disorder [citation], and, essentially, that she could not parcel out factors more than she already had [citation]. Therefore, we are persuaded that [the County] failed to meet its burden of proving that lawful, nondiscriminatory, good faith personnel actions were a substantial cause of [Brooks's] injury."

One commissioner dissented from the Board's decision, stating that the Board should again return the matter for additional evidence because Dr. Allen's opinion did not constitute substantial evidence. The commissioner wrote: "Dr. Allen's opinion contains several inconsistent and unintelligible statements. For example, in her October 29, 2008 report, she stated that, '[a]t this point, there is no particular personnel acts such as being placed on a paid leave of absence or other circumstances that contributed substantially to the development of emotional difficulties.' [Citation to evidence.] She attempted to clarify that statement by stating, 'that personnel acts of being placed on a paid leave of absence and the criticisms pertaining [to] his performance evaluation were not substantially related to the development of emotional difficulties.' A statement, I find equally confusing. [*Sic*.] Moreover, her deposition testimony was equally inconsistent and confusi[ng]. After opining that causation was divided one-third to the grievance, one-third to the investigation, and one-third to [Brooks's] feeling of being unsupported, Dr. Allen admitted that all events were interrelated making it difficult to apportion causation and that some of his feelings of being unsupported by his supervisors were related to the investigation. This inconsistency makes her report unsubstantial."

C.    *Analysis*

Dr. Allen's reports and testimony were the basis for the Board's determination that personnel actions did not substantially cause Brooks's psychiatric injury.  Those reports and testimony, however, taken as a whole, were so confusing and changing that Dr. Allen's opinion cannot be deemed support for the Board's conclusion that personnel actions were not a substantial cause of Brooks's injury.  Therefore, the Board's award must be annulled.

We begin with the findings, unchallenged here, that (1) one-third of Brooks's injury was caused by the internal affairs investigation and (2) the investigation was a personnel action.  Therefore, even if a small amount of the remaining causation can be attributed to personnel actions, then personnel actions were a substantial cause (at least 35 percent) of Brooks's injury.  To determine whether part of the remaining causation can be attributed to personnel actions, as we explain hereafter, we must consider what the record established as the causes of Brooks's "feelings that he was unsupported by his supervisors."

The Board's causation analysis treated Brooks's "feelings that he was unsupported by his supervisors" as a cause of psychiatric injury, as did Dr. Allen.  In reality, however, his feelings were the injury, or symptoms of the injury, not the cause of the injury.

Using the reasoning of Dr. Allen and the Board, one could conclude that even the internal affairs investigation was *not* a personnel action because it was Brooks's *feelings* about the internal affairs investigation that caused the injury not the investigation itself.  Such reasoning is unsound.  It was the internal affairs investigation that caused, in Dr. Allen's opinion, one-third of the injury.  By the same token, we must attempt to determine from the evidence whether events properly identified as personnel actions caused Brooks's "feelings that he was unsupported by his supervisors."

12

As the Board stated in its opinion, Dr. Allen claimed that she separated Brooks's feelings about the investigation from other causes. However, her deposition testimony establishes the opposite, that she did not and could not separate those causes.

When asked whether the lack of support from supervisors related to the investigation and shift change, Dr. Allen did not say "yes" but she unmistakably implied an affirmative answer when she responded: "I think that it *also* had to do with some other circumstances surrounding the situation." (Italics added.)

Dr. Allen testified: "I believe that a lot of when he felt unsupported by his superiors occurred when they told him about the complaint." But the Board failed to recognize that the supervisors' sitting down with Brooks and telling him about the complaint was part of the personnel action involving the investigation and shift change.

Dr. Allen also testified that Brooks felt unsupported because his supervisors "were not sympathetic to his version of events . . . ." That also unmistakably refers to the investigation.

Finally, Dr. Allen admitted under questioning by the County's attorney that, although she tried to separate out the causes, "no doubt it is all interrelated."

Any way you look at Dr. Allen's evidence, as long as you look at all of it, the personnel actions involving the investigation and shift change were causes, if not the only causes, of Brooks's "feelings that he was unsupported by his supervisors."

In deciding this case, the Board noted that causation by a personnel action must be supported by medical evidence, and pointed out that the County had not specifically relied on a medical opinion that supported its position. That is true only if you adopt Dr. Allen's untenable opinion that Brooks's "feelings that he was unsupported by his supervisors" were a cause of his injury. She was unable to differentiate between causes and injury, or symptoms of injury. She admitted that the causes were interrelated, and she was unable to credibly separate them.

13

"[T]he law does not accord to the expert's opinion the same degree of credence or integrity as it does the data underlying the opinion. Like a house built on sand, the expert's opinion is no better than the facts on which it is based." (*Kennemur v. State of California* (1982) 133 Cal.App.3d 907, 923.)

The medical evaluator has no authority to decide what is or is not a personnel action. However, the Board assumed that, because Dr. Allen stated that Brooks's "feelings that he was unsupported by his supervisors" did not constitute a personnel action, there was no personnel action involved in causing those feelings. The Board erred by impliedly accepting Dr. Allen's opinion concerning what is a personnel action when it did not consider the record for evidence concerning what caused Brooks's "feelings that he was unsupported by his supervisors." The error was prejudicial because, absent the error, the Board may well have concluded that personnel actions substantially caused Brooks's psychiatric injury.

Having found that the Board's decision is unsupported, we turn to the question of the appropriate remedy. The faulty assumptions and contradictions in Dr. Allen's reports and testimony concerning the causes of Brooks's injuries establish that better medical evidence and legal analysis are needed to decide the question of whether his injuries were caused by a personnel action. Accordingly, the appropriate remedy is to remand for further development of the record. (See *Kuykendall v. Workers' Comp. Appeals Bd.* (2000) 79 Cal.App.4th 396, 403.)

14

DISPOSITION

The Board's decision is annulled, and the matter is remanded to the Board with directions to further develop the record and reconsider the decision in a manner consistent with this decision.

                                                             NICHOLSON    , J.

We concur:

        RAYE       , P. J.

        HOCH      , J.