[No. S149257. July 3, 2008.]

STATE COMPENSATION INSURANCE FUND, Petitioner, v. WORKERS' COMPENSATION APPEALS BOARD and BRICE SANDHAGEN, Respondents.

BRICE SANDHAGEN, Petitioner, v. WORKERS' COMPENSATION APPEALS BOARD and STATE COMPENSATION INSURANCE FUND, Respondents.

**COUNSEL**

Robert W. Daneri, Suzanne Ah-Tye and Don E. Clark for Petitioner and for Respondent State Compensation Insurance Fund.

Law Offices of Saul Allweiss and Michael A. Marks for California Workers' Compensation Institute as Amicus Curiae on behalf of Petitioner and Respondent State Compensation Insurance Fund.

Sweeney and Forbes and Marguerite Sweeney for Respondent and for Petitioner Brice Sandhagen.

David Bryan Leonard for California Society of Industrial Medicine & Surgery, Inc., as Amicus Curiae on behalf of Respondent and Petitioner Brice Sandhagen.

Hinden, Grueskin, Rondeau & Breslavsky, Graiwer & Kaplan and Charles R. Rondeau for California Applicants' Attorneys Association as Amicus Curiae on behalf of Respondent and Petitioner Brice Sandhagen.

Neil P. Sullivan and Vincent Bausano for Respondent Workers' Compensation Appeals Board.

**OPINION**

**MORENO, J.**—This case presents two related workers' compensation issues: (1) When deciding whether to approve or deny an injured employee's request for medical treatment, must an employer conduct utilization review pursuant to Labor Code section 4610?[1] (2) As an alternative to utilization review, may an employer elect to dispute a request for medical treatment under section 4062, which permits an employer to object to "a medical determination . . . concerning any medical issues . . . not subject to Section 4610 . . ."? (§ 4062, subd. (a).) We conclude the Legislature intended to require employers to conduct utilization review when considering requests for medical treatment, and not to permit employers to use section 4062 to dispute employees' treatment requests. The language of sections 4610 and 4062 mandates this result; this conclusion is especially clear when the language of those statutes is read in light of the statutory scheme and the omnibus reforms

---

[1] All further unlabeled statutory references are to the Labor Code.

enacted by the Legislature in 2003 and 2004. (Sen. Bill No. 228 (2003–2004 Reg. Sess.) (Senate Bill No. 228); Sen. Bill No. 899 (2003–2004 Reg. Sess.) (Senate Bill No. 899).) Accordingly, we reverse the Court of Appeal's contrary judgment and remand for further proceedings consistent with our decision.

## I. Background

In October 2003, a car struck Brice Sandhagen while he was working as a foreman on a road construction project.[2] He injured his neck, back, left elbow, and left wrist and has received medical treatment continuously since the accident. Sandhagen's physician referred him to SpineCare Medical Group, Inc., for a joint consultation by Drs. Goldthwaite and Josey. The physicians recommended a magnetic resonance imaging (MRI) test of Sandhagen's spine to determine if disc herniations or disc degeneration was causing his pain. The physicians submitted a report to Sandhagen's employer's insurer, State Compensation Insurance Fund (State Fund), on May 24, 2004, with a request to authorize the recommended MRI.

State Fund referred the matter to Dr. Krohn for "utilization review."[3] On June 11, 2004, when State Fund did not communicate its decision within the 14-day statutory deadline (§ 4610, subd. (g)(1)), Sandhagen requested an expedited hearing. Ten days later (before the expedited hearing but 28 days after the MRI authorization request was submitted), Dr. Krohn sent a written denial of the medical treatment request, citing new medical treatment guidelines.

An expedited hearing took place on July 15, 2004, on the sole issue of the need for the recommended MRI. The workers' compensation judge found that State Fund's failure to comply with the statutory deadlines precluded it from relying on the utilization review process or Dr. Krohn's report to deny Sandhagen treatment. Only Dr. Goldthwaite's report remained admissible. The workers' compensation judge, finding the MRI authorization request to be consistent with the new treatment guidelines, ordered State Fund to authorize the MRI.

State Fund sought reconsideration by the Workers' Compensation Appeals Board (WCAB). State Fund argued that the consequences for failing to

---

[2] The factual and procedural history is largely taken from the Court of Appeal's opinion.

[3] "Utilization review" is the process by which employers "review and approve, modify, delay, or deny" employees' medical treatment requests. (§ 4610, subd. (a).) The scope and effect of the term will be more fully addressed below.

comply with utilization review guidelines are set forth in section 4610, subdivision (i), which provides for administrative penalties, and in section 4610.1, which allows possible penalties for delay, and that nothing in the statutory scheme allows for the exclusion of a utilization review report. Sandhagen disagreed, contending section 4610, subdivision (g) requires an employer to meet specific deadlines and that State Fund's failure to comply with the deadlines meant that it could not rely on the utilization review process to justify denial of treatment. In addition, Sandhagen argued that the workers' compensation judge properly excluded Dr. Krohn's denial letter. He further argued that he had met his evidentiary burden to prove that the requested treatment was medically reasonable and necessary.

The WCAB granted reconsideration. Due to the important legal issues presented and in order to secure uniformity of future decisions, the matter was assigned to the WCAB as a whole for an en banc decision. On November 16, 2004, the WCAB issued its decision, holding that the section 4610 deadlines are mandatory and State Fund's failure to meet the deadlines means that, with respect to the particular medical treatment dispute in question, it was precluded from using the utilization review process or any utilization review report it obtained to deny treatment. However, the WCAB also held that, while precluded from using the utilization review process, State Fund could nonetheless dispute the treating physician's treatment recommendation using the dispute resolution procedure set forth in section 4062.[4] Accordingly, the WCAB vacated the workers' compensation judge's determination that Sandhagen was entitled to the MRI and instead gave State Fund an opportunity to proceed under section 4062.

State Fund filed a petition for writ of review. Sandhagen also sought review, specifically of the portion of the decision that held that State Fund could object to the treatment authorization under section 4062, notwithstanding its failure to comply with the procedures set forth in section 4610. The Court of Appeal granted both petitions.

The Court of Appeal affirmed both of the WCAB's holdings. The Court of Appeal agreed that State Fund's failure to comply with the mandatory deadlines precluded State Fund from using the process to deny Sandhagen's request for medical treatment. However, as did the WCAB, the Court of Appeal concluded that State Fund could nonetheless object to the medical

---

[4] Section 4062, subdivision (a) permits an employee or employer to object to "a medical determination made by the treating physician concerning any medical issues not covered by Section 4060 or 4061 and not subject to Section 4610 . . . ."

treatment request under the dispute resolution process set forth in section 4062, reasoning that an employer is not required to use the utilization review process when considering employees' requests for medical treatment. We granted Sandhagen's petition for review.[5]

## II. DISCUSSION

This case requires us to determine the meaning and effect of section 4610, in which the Legislature established the utilization review process, in relation to section 4062, which generally governs disputes between injured employees and their employers regarding "medical issues . . . not subject to Section 4610 . . . ."[6] In determining that the Legislature intended for employers' review of employees' medical treatment requests to be governed solely by section 4610, rather than section 4062, we rely primarily on the clear statutory language. (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 871 [39 Cal.Rptr.2d 824, 891 P.2d 804].) In addition, comparing the current statutory scheme with previous iterations provides further support for our conclusion.

### A. *Statutory Scheme Requires Employers to Conduct Utilization Review When Resolving Requests for Medical Treatment*

Section 4610 requires that "[e]very employer . . . establish a utilization review process in compliance with this section" (*id.*, subd. (b)), defining utilization review as "functions that prospectively, retrospectively, or concurrently review and approve, modify, delay, or deny, based in whole or in part on medical necessity to cure and relieve, treatment recommendations by physicians . . ." (*id.*, subd. (a)). Notwithstanding the breadth of this statutory directive, State Fund claims that section 4610 simply requires employers to "establish" a utilization review process, but does not require employers to actually *use* the process. We find this argument unpersuasive. Having broadly defined utilization review, and requiring every employer to establish such a process at considerable expense and with numerous statutory safeguards (discussed in further detail below), it is unlikely that the Legislature intended to allow employers to circumvent the process whenever an employer felt it expedient. To the contrary, the statutory language indicates the Legislature intended for employers to use the utilization review process when reviewing and resolving *any and all* requests for medical treatment.

---

[5] State Fund did not seek review of the Court of Appeal's holding that its failure to comply with the section 4610 deadlines precluded it from using the utilization review process to deny the medical treatment request, and rendered Dr. Krohn's report inadmissible.

[6] The WCAB's interpretation of these statutes is subject to de novo review. While we typically give great weight to the WCAB's administrative construction of the statutes it is charged to enforce and interpret, we will annul clearly erroneous interpretations. (*Lockheed Martin Corp. v. Workers' Comp. Appeals Bd.* (2002) 96 Cal.App.4th 1237, 1241 [117 Cal.Rptr.2d 865].)

■ Believing that it can "opt out" of the review process, State Fund claims that it can instead utilize the more general section 4062 dispute resolution procedures. Not so. State Fund's assertion is belied by the language of section 4062 itself. The statute permits employers to object to a treating physician's medical determinations, but *only* to those determinations regarding "medical issues not covered by Section 4060 or 4061 *and not subject to Section 4610* . . . ." (§ 4062, subd. (a), italics added.) By contrast, section 4062 explicitly permits *employees* to use its provisions to object to an employer's "decision *made pursuant to Section 4610* to modify, delay, or deny a treatment recommendation . . . ." (*Id.,* subd. (a), italics added.) In summary, section 4062 simultaneously *precludes* employers from using its provisions to object to employees' treatment requests but *permits* employees to use its provisions to object to employers' decisions regarding treatment requests. The Legislature's intent regarding employers' use of section 4062 to dispute treatment requests could not be more clear.

■ Taken together, the language of sections 4610 and 4062 demonstrates that (1) the Legislature intended for *employers* to use the utilization review process in section 4610 to review and resolve any and all requests for treatment, and (2) if dissatisfied with an employer's decision, an *employee* (and only an employee) may use section 4062's provisions to resolve the dispute over the treatment request. An employer may not bypass the utilization review process and instead invoke section 4062's provisions to dispute an employee's treatment request. The correctness of this conclusion is particularly evident when the current statutory provisions are compared to prior schemes for handling employees' treatment requests.

### B.  *Prior Schemes Demonstrate the Legislature Intended for Section 4610 to Govern Employers' Review*

In order to better understand what the Legislature intended when it adopted the procedures in sections 4610 and 4062, it is helpful to consider the way in which the process for reviewing employees' treatment requests has changed over time.

### 1.  *Historical Evolution of the Treatment Request Process*

The workers' compensation scheme makes the employer of an injured worker responsible for all medical treatment reasonably necessary to cure or relieve the worker from the effects of the injury. (§ 4600, subd. (a).) When a worker suffers an industrial injury, the worker reports the injury to his or her employer and then seeks medical care from his or her treating physician.

After examining the worker, the treating physician recommends any medical treatment he or she believes is necessary and the employer is given a treatment request to approve or deny. The standards applied in evaluating these treatment requests and the process by which treatment requests are resolved have both been significantly modified in the recent past. For our purposes, the relevant periods are (1) the time preceding passage of Senate Bill No. 228, (2) after Senate Bill No. 228 went into effect on January 1, 2004, and (3) after Senate Bill No. 899 went into effect on April 19, 2004.

### a. *Before Senate Bill No. 228*

Before the passage of Senate Bill No. 228, there were no uniform medical treatment guidelines in effect. Whether a medical treatment request was "necessary" depended solely upon the opinion of the treating physician measured against the general standard that "necessary" treatment was that which was "reasonably required to cure or relieve the injured worker of the effects of his or her injury." (Former § 4600, as amended by Stats. 1998, ch. 440, § 2.) Moreover, former section 4062.9 provided a rebuttable presumption that the findings of an injured employee's treating physician were correct. (Stats. 2002, ch. 6, § 53.)

If an employer wanted to obtain a report from a doctor other than the treating physician regarding the necessity of certain medical treatment, essentially the only option for the employer was to initiate the rather cumbersome, lengthy, and potentially costly process under former section 4062, a catchall dispute resolution provision. Former section 4062, subdivision (a) provided that "[i]f either the employee or employer objects to a medical determination made by the treating physician *concerning . . . the extent and scope of medical treatment* . . . or any other medical issues not covered by Section 4060 or 4061,[7] the objecting party shall notify the other party in writing of the objection . . . ." (Stats. 2002, ch. 6, § 52, italics added.)

An employer objecting to a treatment request had to do so within 20 days if the injured employee was represented by counsel, and within 30 days if the employee was unrepresented, although the time limits could be extended for good cause. (Former § 4062, subd. (a), as amended by Stats. 2002, ch. 6, § 52.) In the case of a represented employee, the statute directed the parties to seek agreement on a physician to prepare a comprehensive medical evaluation resolving the disputed issue. (*Ibid.*) If the parties were unable to pick an

---

[7] Sections 4060 and 4061, like section 4062, are dispute resolution provisions. Section 4060 governs disputes over the compensability of an injury, and section 4061 covers disputes over permanent disability.

agreed medical evaluator (AME) within 10 days (or 20 days if the parties agreed to extend the time), the parties could not thereafter select an AME. (*Ibid.*) After the time for reaching an agreement had expired, the objecting party could select a qualified medical evaluator (QME) to conduct a comprehensive medical evaluation. (*Ibid.*) The nonobjecting party could choose to rely on the treating physician's report or could select a QME of its own, to conduct an additional comprehensive evaluation. (*Ibid.*)[8] The employer was liable for the cost of a medical evaluation obtained by the employee pursuant to former section 4062. (§ 4064, subd. (a).)

After the injured worker was examined, the scheduling of which often resulted in further delays, the AME or QME had 30 days in which to prepare an evaluation, addressing all contested medical issues, and serve the evaluation and a summary on the employee, employer, and the Administrative Director of the Division of Workers' Compensation (administrative director).[9] (Former § 139.2, subd. (j)(1), as amended by Stats. 2000, ch. 54, § 1; former § 4062, subd. (c), as amended by Stats. 2002, ch. 6, § 52.) If a dispute remained after the comprehensive medical evaluations were completed, either party could request an administrative hearing. (§ 5500.) If the hearing failed to satisfy the parties, they could seek reconsideration by the WCAB (§ 5900) and, ultimately, review by the Court of Appeal (§ 5950).

There was also an administrative (rather than statutory) utilization review alternative to proceeding under former section 4062. (Cal. Code Regs., tit. 8, former § 9792.6, Register 98, No. 46 (Nov. 13, 1998).) However, use of the process was voluntary and, because the administrative process contained no uniform medical standards, interested employers had to first undertake a complicated effort to design and submit their own medically based criteria to the administrative director. (*Id.,* subds. (b), (c), (d), (e).)[10] As a result, the administrative process was little used and most treatment requests were resolved via the procedures in former section 4062.

b. *Senate Bill No. 228*

Senate Bill No. 228, effective January 1, 2004, enacted comprehensive workers' compensation reform. The Legislature, reacting to escalating costs, made a number of critical changes to the statutory scheme. Particularly

---

[8] Former section 4062 established a different procedure for unrepresented employees.

[9] Under former section 139.2, subdivision (j)(1), the AME or QME could, for good cause, seek an extension of the 30-day deadline. (Stats. 2000, ch. 54, § 1.)

[10] This process was also unattractive to employees, as it permitted a treatment decision to be delayed as long as the employer gave notice of the delay in a timely manner. (Cal. Code Regs., tit. 8, former § 9792.6, subd. (c)(1).)

relevant here are changes to the standards used in evaluating medical treatment requests as well as alterations to the process for resolving the treatment requests.

The Legislature added section 5307.27, directing the administrative director to adopt a medical treatment utilization schedule to establish uniform guidelines for evaluating treatment requests. (Stats. 2003, ch. 639, § 41.) The provision further provides that this schedule shall incorporate "evidence-based, peer-reviewed, nationally recognized standards of care" and address the "appropriateness of all treatment procedures . . . commonly performed in workers' compensation cases." (§ 5307.27.) The Legislature also amended section 4062.9, limiting the presumption of correctness that had previously applied to a treating physician's opinion (Stats. 2003, ch. 639, § 20), and added section 4604.5, which created a rebuttable presumption that the treatment guidelines in the utilization schedule were correct on the issue of extent and scope of medical treatment.[11] (Stats. 2003, ch. 639, § 27.)

■ In addition to changing the standards for evaluating treatment requests, Senate Bill No. 228 also made a number of important changes to the process of resolving treatment requests. Most significantly, the Legislature enacted a statutory utilization review process in section 4610. (Stats. 2003, ch. 639, § 28.) In addition to requiring every employer to "establish a utilization review process" (§ 4610, subd. (b)), section 4610 also enacted a number of procedural and substantive requirements. Most notably, subdivision (e) of section 4610 allows only a licensed physician, who is competent to evaluate the specific clinical issues involved, to modify, delay, or deny requests for treatment. Accordingly, while medical review is not required if the employer *approves* the treatment request, section 4610 requires that a licensed doctor deny, delay, or modify the request. This represents a significant departure from the process in former section 4062, which permitted an employer or claims adjuster (without review by a physician) to object to a treatment request. (§ 4062, as amended by Stats. 2002, ch. 6, § 52.)

Section 4610, subdivision (g) imposes a number of additional requirements that must be met as part of the utilization review process. Among them are: (1) treatment decisions must be made in a timely fashion, not to exceed five working days from the receipt of information reasonably necessary to make the determination, and in no event more than 14 days from the date of the

---

[11] Former section 4604.5 provided that until the administrative director adopted a utilization schedule, guidelines promulgated by the American College of Occupational and Environmental Medicine be used as interim standards and be presumed to be correct on the issue of extent and scope of medical treatment. (Former § 4604.5, subd. (c), added by Stats. 2003, ch. 639, § 27.)

request for treatment (§ 4610, subd. (g)(1)); (2) if the request is not approved in full, disputes shall be resolved in accordance with section 4062 (§ 4610, subd. (g)(3)(A)); and (3) if an employer cannot make a decision within the specified timeframes because it (a) is not in receipt of all the information reasonably necessary and requested, (b) requires consultation by an expert reviewer, or (c) has asked that an additional examination be performed on the employee that is reasonable and consistent with good medical practice, the employer must immediately notify the physician and the employee. (*Id.,* subd. (g)(5).) Upon receipt of all information reasonably necessary and requested by the employer, the employer shall approve, modify, or deny the request for authorization within the specified timeframes. (*Ibid.*)

■ As the Court of Appeal here recognized, the Legislature intended utilization review to ensure quality, standardized medical care for workers in a prompt and expeditious manner. To that end, the Legislature enacted a comprehensive process that balances the dual interests of speed and accuracy, emphasizing the quick resolution of treatment requests, while allowing employers to seek more time if more information is needed to make a decision. (§ 4610, subd. (g).) If the treatment request is straightforward and uncontroversial, the employer can quickly approve the request—utilization review is completed without any need for additional medical review of the request. If the request is more complicated, the employer can forward the request to its utilization review doctor for review, since the statute requires that the employer seek a medical opinion before modifying, delaying, or denying an employee's request for medical treatment. (*Id.,* subd. (e).)[12] This ensures that a physician, rather than a claims adjuster with no medical training, makes the decision to deny, delay, or modify treatment.

### c. *Senate Bill No. 899*

As we recently noted, Senate Bill No. 899 was passed as an urgency bill in response to "a perceived crisis in skyrocketing workers' compensation costs." (*Brodie v. Workers' Comp. Appeals Bd.* (2007) 40 Cal.4th 1313, 1329 [57 Cal.Rptr.3d 644, 156 P.3d 1100].) Like Senate Bill No. 228, Senate Bill No. 899 was an omnibus reform that made a number of significant changes to the workers' compensation scheme, including, as particularly relevant here, altering the standards used in evaluating workers' requests for medical treatment and the process for evaluating them.

---

[12] Senate Bill No. 228 also repealed former section 4062 (Stats. 2003, ch. 639, § 16.5) and replaced it with a new section 4062 (Stats. 2003, ch. 639, § 17) addressing the same subject matter. The new section 4062 was the same as the previous version, except for the addition of language concerning requests for spinal surgery. (Compare Stats. 2002, ch. 6, § 52 with Stats. 2003, ch. 639, § 17.)

With Senate Bill No. 899, the Legislature amended section 4600 to define "medical treatment that is reasonably required to cure or relieve the injured worker from the effects of his or her injury" as "treatment that is based upon the guidelines adopted by the administrative director pursuant to Section 5307.27 or, prior to the adoption of those guidelines, the updated American College of Occupational and Environmental Medicine's Occupational Medicine Practice Guidelines." (Stats. 2004, ch. 34, § 23.) Senate Bill No. 899 also repealed section 4062.9, which had contained a presumption of correctness for the findings of an injured employee's treating physician (Stats. 2004, ch. 34, § 22), while making slight modifications to section 4604.5, which contains a presumption of correctness for the treatment guidelines. (Stats. 2004, ch. 34, § 25.)

The Legislature amended section 3202.5 to underscore that all parties, including injured workers, must meet the evidentiary burden of proof on all issues by a preponderance of the evidence. (Stats. 2004, ch. 34, § 9.) Accordingly, notwithstanding whatever an employer does (or does not do), an injured employee must still prove that the sought treatment is medically reasonable and necessary. That means demonstrating that the treatment request is consistent with the uniform guidelines (§ 4600, subd. (b)) or, alternatively, rebutting the application of the guidelines with a preponderance of scientific medical evidence (§ 4604.5).

While Senate Bill No. 899 did not alter the section 4610 utilization review process, it made a number of changes to the dispute resolution process in section 4062 that are particularly relevant here. First, the prior version of section 4062, subdivision (a) (Stats. 2003, ch. 639, § 17) permitted an employee or employer to object to a treating physician's medical determination regarding "the permanent and stationary status of the employee's medical condition, the employee's preclusion or likely preclusion to engage in his or her usual occupation, *the extent and scope of medical treatment,* the existence of new and further disability, *or any other medical issues not covered by Section 4060 or 4061 . . . .*" (Italics added.) The Legislature amended section 4062, subdivision (a), eliminating "the extent and scope of medical treatment" from the list of things to which an employer may object. (Stats. 2004, ch. 34, § 14.) Subdivision (a) of section 4062 now permits an employer to object only to medical determinations regarding "any medical issues not covered by Section 4060 or 4061 *and not subject to Section 4610 . . . .*" (Italics added.) Second, Senate Bill No. 899 made another change to section 4062, subdivision (a), adding that "[i]f the *employee* objects to a decision made pursuant to Section 4610 to modify, delay, or deny a treatment

recommendation, the employee shall notify the employer of the objection in writing within 20 days of receipt of that decision." (Stats. 2004, ch. 34, § 14, italics added.)

Senate Bill No. 899 also changed the AME/QME process, eliminating the competing comprehensive evaluations that often existed under former section 4062. In the case of represented employees, the bill repealed former section 4062.2 (Stats. 2004, ch. 34, § 17) and replaced it with new section 4062.2 (Stats. 2004, ch. 34, § 18). As with the procedure under former section 4062, new section 4062.2 instructs the parties to attempt to select an AME. If the parties cannot reach an agreement within 10 days (or 20 days if the parties agree to extend the time), either party may request a three-member panel of QME's be assigned. (*Ibid.*) The parties must then confer and attempt to agree on one of the QME's. (*Ibid.*) "If the parties have not agreed on a medical evaluator from the panel by the 10th day after assignment of the panel, each party may then strike one name from the panel" and "[t]he remaining [QME] shall serve as the medical evaluator." (*Ibid.*)[13] "[N]o other medical evaluation shall be obtained." (§ 4062, subd. (a).)[14]

## 2. Evolution of the Review Process Demonstrates Legislature's Intent

Understood against this historical backdrop, it is clear the Legislature intended for employers to resolve treatment requests via the section 4610 process. As discussed above, Senate Bill Nos. 228 and 899 were aimed at controlling skyrocketing costs while simultaneously ensuring workers' access to prompt, quality, standardized medical care. To accomplish those goals, the Legislature made a number of significant changes, the most relevant of which was adopting the comprehensive utilization review process in section 4610 along with the concomitant changes to the dispute resolution procedure in section 4062.

In place of the often lengthy and cumbersome process employers used to dispute treatment requests prior to the passage of Senate Bill No. 228, the Legislature created a utilization review process that combines what are typically quick resolutions (§ 4610, subd. (g)(1)) with accuracy—employers

---

[13] As with evaluations performed under former section 4062, evaluations performed under section 4062.2 must be prepared and submitted within 30 days unless the evaluator has sought, and received, an extension of time. (§ 139.2, subd. (j)(1)(A), amended by Stats. 2004, ch. 34, § 2.) If the QME fails to complete the evaluation within the timeline, either party can request a new evaluation and the process begins again. (§ 4062.5, amended by Stats. 2004, ch. 34, § 20.)

[14] As under former section 4062 (added by Stats. 2003, ch. 639, § 17), the procedure is different for unrepresented employees.

can have their utilization review doctors review treatment requests, employers can seek additional time to obtain additional information or examinations (id., subd. (g)(5)), and medical review is required before the utilization review doctor can modify, delay, or deny a treatment request (id., subd. (e)). State Fund asserts that there are instances when, or reasons why, it might not be reasonable to subject a treatment request to the utilization review process. We are not persuaded—indeed, the cited examples betray a fundamental misunderstanding of the scope of utilization review and its requirements.

For example, State Fund claims that "if the employer determines, without [utilization review], that the recommended treatment is reasonably required, 'imposing the [utilization review] process would be both time consuming and expensive.' " But when the employer in the hypothetical reviews the request and determines that treatment is reasonably required, the employer has *engaged in utilization review.* (See § 4610, subd. (a).) The hypothetical actually demonstrates that utilization review provides an expeditious manner of resolving treatment requests, being neither time consuming nor expensive, especially when compared to the process previously in place. In light of the comprehensive nature of section 4610 and the goals the Legislature sought to accomplish, we conclude the Legislature intended for the utilization review process to be employers' only avenue for resolving an employee's request for treatment.

■ We also conclude that section 4062 is *not* available to employers as an alternative avenue for disputing employees' requests for treatment. The Legislature made clear that an employer may not use section 4062 to object to a medical determination concerning medical issues "subject to section 4610" while expressly permitting *employees* to use section 4062 to resolve disputes over an employer's decision not to approve treatment requests (Stats. 2004, ch. 34, § 14)—i.e., the plain language of section 4062 establishes that only employees may use section 4062 to resolve disputes over requests for treatment. This limitation is made even clearer when the current section 4062 is compared to previous versions. Former section 4062 allowed employers to object to medical determinations concerning "the extent and scope of medical treatment . . . ." (Stats. 2003, ch. 639, § 17.) In Senate Bill No. 899, the Legislature deleted that phrase. (Stats. 2004, ch. 34, § 14.) "We presume the Legislature intends to change the meaning of a law when it alters the statutory language [citation], as for example when it deletes express provisions of the prior version . . . ." (*Dix v. Superior Court* (1991) 53 Cal.3d 442, 461 [279 Cal.Rptr. 834, 807 P.2d 1063].) State Fund would have us read "the extent and scope of medical treatment" back into the statute as one of the matters employers may object to under section 4062. We decline to do so.

■ Accordingly, in light of the clear statutory language and the Legislature's purpose in enacting the utilization review process in section 4610, we conclude

the Legislature intended to require employers to conduct utilization review when considering employees' requests for medical treatment. Employers may not use section 4062 as an alternative method for disputing employees' treatment requests.

## III. DISPOSITION

The judgment of the Court of Appeal is reversed and the matter is remanded to that court for further proceedings consistent with this opinion.

George, C. J., Baxter, J., Werdegar, J., Chin, J., and Corrigan, J., concurred.

**KENNARD, J., Concurring.**—I agree with the majority's conclusion and much of its analysis. Specifically, I agree that the "utilization review" process set forth in Labor Code[1] section 4610 is mandatory. I also agree that, if an employer fails to meet section 4610's deadlines, it may not object to the employee's requested medical treatment under section 4062. Certain language in the majority's opinion, however, might be misread to suggest that utilization review is a dispute-resolution process that *replaces* the "cumbersome, lengthy, and potentially costly" dispute-resolution process that previously applied under former section 4062. (Maj. opn., *ante*, at p. 238.) As I understand the statutory scheme, the utilization review process adds a *new step* that the employer must take *before* section 4062 comes into play, but it *does not replace the section 4062 process*. Section 4062 remains the means for resolving any dispute between the parties regarding medical treatment, as I explain below.

Section 4600 requires employers to provide their employees with medical treatment for their work-related injuries. When disputes arise regarding the conclusions and recommendations of the treating physician, section 4062 sets forth the primary procedural mechanism for resolving those disputes. Among other things, section 4062 governs disputes regarding which specific medical treatments are appropriate. Section 4062 played this role in the statutory scheme before the Legislature mandated utilization review in the year 2003, and it continues to play this role now.[2] Utilization review, by contrast, is not concerned with dispute resolution; rather, it governs the process by which the employer makes its initial decision whether to approve or deny the proposed medical treatment. Section 4610, subdivision (g)(3)(A), makes this point expressly. It states that if the employer, having followed the utilization review

---

[1] All further statutory references are to the Labor Code.
[2] Section 4062 remains the means for resolving medical treatment disputes, but in 2004 the Legislature changed the specifics of this dispute-resolution procedure in significant ways.

process, does anything short of fully approving the employee's request for medical treatment, any resulting dispute is resolved under section 4062, same as ever.

One purpose of utilization review is to prevent disputes about medical treatment from ever arising. Before 2003, the medical treatment the employer was obligated to provide for work-related injuries was only vaguely defined as "treatment . . . that is reasonably required to cure or relieve from the effects of the injury." (Former § 4600, as amended by Stats. 1998, ch. 440, § 2.) This indistinct standard left a lot of room for disagreement. The Legislature's reforms of the workers' compensation law in 2003 and 2004 much more precisely define the employer's medical treatment obligation in terms of detailed treatment guidelines. (See §§ 4600, subd. (b), 4610, subd. (c).) Because proper application of these treatment guidelines requires medical expertise, the decision to modify, delay, or deny a treatment request must be made by a licensed physician. (§ 4610, subd. (e).) Thus, utilization review is best understood as a *threshold* procedure that the employer must follow before any dispute about medical treatment has arisen. It governs the employer's evaluation of the treating doctor's recommendation. If the employer approves the requested treatment, then there is no dispute and likewise no need to resort to dispute-resolution procedures. A dispute might arise only if the employer modifies, delays, or denies the requested treatment, in which case the employee may invoke section 4062's dispute-resolution mechanism. (§§ 4610, subd. (g)(3)(A), 4062, subd. (a).)

Hence, section 4610's utilization review is not to be conflated with the process of dispute resolution. Section 4062 continues to govern medical treatment disputes, as it did before the reforms. The statutory scheme does not create two separate dispute-resolution tracks for employers and for employees. Instead, it sets forth two successive stages of a single-track process: The employer first proceeds with utilization review under section 4610, and then the employee may dispute the employer's conclusion under section 4062. (§ 4610, subd. (g)(3)(A).) The fact that the "*employee* (and only an employee)" (maj. opn., *ante*, at p. 237) initiates the dispute-resolution process set forth in section 4062 is not intended to exclude employers from that process; rather, it merely reflects the circumstance that utilization review has been interposed as a threshold step. The employer who seeks to object to a proposed medical treatment must follow the utilization review process. If that process results in a modification, delay, or denial of the requested treatment, then naturally the employee is the party that invokes the section 4062 dispute-resolution mechanism, because the employee is the aggrieved party.

To summarize, after the reforms enacted by the Legislature in 2003 and 2004, section 4062 remains the only process for resolving disputes regarding medical treatment (see § 4610, subd. (g)(3)(A)), and its cumbersomeness and lengthiness merely reflect the Legislature's desire to ensure fairness to the parties.[3] Section 4610's utilization review does not supplant section 4062's dispute-resolution process; rather, it adds a new threshold step to that process. It can only be said to supplant that process in the practical sense—that is, it might prevent some disputes from ever arising, thereby making resort to that process unnecessary.

---

[3] The 2004 reform streamlined the section 4062 dispute-resolution process in several ways that are not at issue here. In particular, the 2004 reform created the single-medical-examiner rule, thereby reducing the likelihood of litigation over medical questions. (§ 4062.2, subd. (c).)