[No. C069906. Third Dist. Oct. 23, 2012.]

ADVENTIST HEALTH, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and EVELYN
FLETCHER, Respondents.

378

COUNSEL

Law Office of James E. Bruscino and James E. Bruscino for Petitioner.

No appearance for Respondent Workers' Compensation Appeals Board.

Evelyn F. Fletcher, in pro. per., for Respondent Evelyn Fletcher.

OPINION

**RAYE, P. J.**—The doctors and the workers' compensation judge agree that this is a complicated case because the injured worker has been unable to find physicians in Maryland her employer will approve, and who will accept a California workers' compensation case and comply with the reporting requirements while providing adequate treatment for her unremitting back pain. The petition for a writ of review by the self-insured employer, Adventist Health (Adventist), is but the latest installment in the ongoing battle over Evelyn Fletcher's treatment.

Everyone agrees that Fletcher needs a new treating physician. The employer does not challenge her right to or her need for future medical treatment, and the injured worker does not challenge the removal of her doctor, who failed to comply with reporting requirements. No one insists that the doctor who was temporarily enlisted to treat her should remain her treating physician. The precise factual issues before us are fleeting and of little lasting significance in a case that is now over 12 years old, though the underlying legal principles require explication.

■ Here, the workers' compensation judge sought to craft a creative and compassionate solution to Fletcher's conundrum. However, the rigid statutory rules governing treatment for a work-related injury do not provide room for the creative discretion the judge sought to exercise in this case. We issued a writ of review (Lab. Code, § 5950) and shall annul the order of the Workers' Compensation Appeals Board (WCAB) because Fletcher did not properly designate a new primary treating physician but returned to physicians who had been administratively removed because they did not provide the employer with a plan of treatment or any medical reports. The WCAB acted without authority, therefore, when it ordered Adventist to reimburse Fletcher for self-procured medical care and ordered two of her medical records to be withheld from the next primary treating physician without good cause.

## FACTS

Three quarters of the record before us documents the torturous history of this case, medically and legally, but is essentially irrelevant to the narrow issues presented in the petition for a writ of review. We very briefly recap that history to provide a sense of the context for and tenor of the current wrangling.

Fletcher suffered a work-related injury to her back on May 26, 2000, which resulted in back surgery in 2004. Unfortunately, the surgery was unsuccessful and she has been unable to work since that time. She suffers chronic pain 24 hours a day, seven days a week, night and day. She cannot sleep and cannot bend, lift, or walk without severe pain.

Fletcher, who now lives in Maryland and cares for her elderly mother, requested a change of venue from Redding to San Francisco to eliminate the long drive from the Sacramento airport to Redding. As a litigant in propria

persona, she failed to serve the employer with the request. James E. Bruscino, representing Adventist, threatened her with monetary sanctions for any further ex parte communications and opposed her request for a change of venue. Venue was changed to Sacramento.

Judge Joseph S. Samuel was assigned to the case in January of 2008. At the hearing on January 7, 2008, Judge Samuel admonished Bruscino: "I find this really troubling when the injured worker is put in a position of having to adjust her own claim, and I really have a great deal of trouble with that, but I understand the carriers need some sort of indication that it relates to the industrial injury, but my impression is these things get sent to clerical staff who kind of move them around, and so I am going to order, Mr. Bruscino, that you take the lead in ensuring that clarity, that your client gets clear information. I mean, you know, from what Ms. Fletcher is saying—she shouldn't have to be dealing with this. This should be between the hospital and the adjuster."

Adventist denied trigger point injections to relieve Fletcher's back pain. In the same hearing, the judge expressed his frustration that the treatment had not been approved. "Well, I've got to tell you, Mr. Bruscino, I don't understand why these things are not certified."

Fletcher did not always prevail in the various disputes that erupted; Adventist prevailed in at least two of its petitions for reconsideration before the WCAB. On these occasions, Judge Samuel made creative orders to help facilitate the frustrating process of securing treatment for Fletcher in Maryland and to help Fletcher live with the physical and psychological pain caused by both the industrial injury and the never-ending battle to get treatment. Thus, in the absence of a request from Fletcher or any of her doctors and without notice to the employer, he ordered a nurse case manager and psychological counseling. The WCAB reversed those orders.

By 2006 Fletcher was permanent and stationary. The employer acknowledges that she is entitled to reasonable and necessary medical expenses for her industrial injury. Predictably, the parties disagree vehemently on what is reasonable and necessary.

For some time, Fletcher was receiving treatment from Dr. Atif Malik, a pain medicine specialist. Adventist filed a petition with the administrative director of the Division of Workers' Compensation complaining that Dr. Malik failed to comply with a reporting requirement, and requesting that Fletcher be ordered to select a new primary treating physician from a list of five other pain medicine specialists. Fletcher did not object and concedes the doctor failed to report as required. The director granted the petition.

The removal, however, precipitated the problems that led to the instant petition. None of the physicians provided by Adventist would accept Fletcher. Fletcher testified that Dr. Ghazal was willing to treat her, but Adventist would not authorize treatment or the doctor ultimately decided he was unwilling to treat. Either way, the situation left Fletcher without a treating physician.

Having had an unpleasant experience with Dr. Justin Wasserman in 2007, Fletcher expressed her reluctance to see him again. Adventist insisted. In need of pain medication, Fletcher agreed to see Wasserman temporarily while they found another primary treating physician. From the accounts of both the doctor and his patient, the visits were miserable. Wasserman's accounts of his encounters with Fletcher are included in his medical reports. The accounts are most unflattering. Fletcher explained at the hearing that her visits with Dr. Wasserman were a "nightmare" and "disgusting." She urged him to include in her medical report her letter to Adventist describing the visits and informing Adventist that she was unwilling to continue seeing him.

The medical reports also document Wasserman's opinion on the medication prescribed to address Fletcher's pain, including that "[o]ne of her biggest problems is that she is getting greater tolerance to the opioids," her pain medication was "not effective," and she "seems to be getting mini-withdrawal symptoms." The doctor also opined that she showed signs of depression, although Fletcher denied "outright depression, though she has a history of depression."

On May 16, 2011, Fletcher filed a "Declaration of Readiness to Proceed to Expedited Hearing" on the issue of entitlement to medical treatment. The hearing was held on June 28, 2011. The transcript of the hearing reveals what the petition does not: the issues were not clearly defined, the participants do not appear to have understood what was transpiring, and the objections do not correspond with what Judge Samuel ruled. As a result, one of our challenges is to describe what occurred at the hearing.

By 2011 Judge Samuel, James Bruscino, and Evelyn Fletcher were well acquainted with the facts and with each other. Fletcher was without a primary treating physician, unhappy with the treatment she received from Wasserman, and stymied in her search for someone else. Bruscino, on behalf of Adventist, and Fletcher entered into a stipulation that reads: "Applicant has provided the names of three doctors with 'Shady Grove Group' (Dr. Hough, Dr. Peruvemba, Dr. Ali). Defense counsel will write to the doctors to determine if any one of them would be willing to act as Primary Treating Physician and operate under California workers' compensation laws. Once written confirmation is received, defendant will authorize the doctor as the Primary Treating Physician. [¶] If none of the doctors listed above are willing to act as the primary

treating physician, Applicant will provide additional doctors' names, addresses, and defense counsel will write to them as noted above."

But Fletcher was faced with a dilemma in the meantime. She testified that following her two terrible experiences with Wasserman, in February 2011 she sought pain relief from Dr. Rodriguez, who works in the same office as Dr. Malik. Like Dr. Malik, whom Adventist had successfully removed, Dr. Rodriguez had not submitted any medical reports to Adventist. Nevertheless, Fletcher sought reimbursement for costs associated with the treatment she received in their offices, including costs for medications they prescribed. Judge Samuel made the following finding of fact: "Applicant reasonably and necessarily incurred medical expenses that are defendant's liability under the Award of treatment, herein."

The real confusion at the hearing involved Wasserman's medical reports. Fletcher expressed her dissatisfaction with her visits to Wasserman's office. She insisted that her letter informing Adventist that she would not see Wasserman should be included in her medical records. But Judge Samuel wanted to insulate the next treating physician from the acrimony between Wasserman and Fletcher. In the minutes of the hearing, he states, "I'm not going to create a little subdispute mechanism for the doctor to deal with. That is not his role. His function is not to resolve your dispute with Dr. Wasserman." Fletcher did not ask to have Wasserman's reports withheld from the next physician. She did not seem to understand Judge Samuel's suggestion and insisted that her rebuttal be included in the record. The judge denied her request.

The judge explained, however: "Well, taking into consideration what's been said today and my understanding of the background of this case, I think it would be counterproductive to send Dr. Wasserman's report to whichever the selected physician is, and so I'm going to specifically order that they not be sent." The order pertained only to the two reports from November and December 2010, but the older Wasserman reports would remain part of her medical records. The judge told Fletcher, "My hope is that you will just look forward with the new doctor, not get into your issues with Dr. Wasserman."

Bruscino voiced his objection: "Defendant's position is that for any future treating doctor, it is not defendant's ability to pick and choose what they send as far as the medical evidence is. The medical evidence is the entire medical evidence, including Dr. Wasserman's reports. If the Board decides to basically redact the record and remove Dr. Wasserman's report, I will determine if my client wants to appeal that. I just don't know. Dr. Wasserman's reports do seem to be indicative of—seems to be a longstanding problem with [sic] case—with regards to treatment though, so I think they are [relevant] to any new treater."

Adventist challenges the order granting Fletcher reimbursement for self-procured medical treatment and withholding Wasserman's two medical reports from inclusion in her medical records. It appears that Adventist is also seeking an order or declaration that Wasserman should remain the primary treating physician until Fletcher designates a new one. We address these issues below.

## DISCUSSION

## I

*Reimbursement for Self-procured Medical Treatment*

Fletcher initiated the instant proceedings when she filed on May 11, 2011, a declaration of readiness to proceed with an expedited hearing. We should point out that Adventist objected for three reasons: (1) it was unclear what "applicant is alleging or wants"; (2) there was no medical report to counter Dr. Wasserman's recommendations; and (3) it was impossible to determine if the self-procured treatment with Dr. Rodriguez was reasonably necessary "considering the lack of medical reporting." Fletcher sought, and the WCAB awarded, reimbursement for the expenses she incurred for office visits to Drs. Malik and Rodriguez, and medication primarily from February through May 2011. Medicare paid for some of these services beginning on April 1, 2011. At issue is approximately $2,000.

What is clear is that following her December visit to his office, Fletcher refused further treatment by Dr. Wasserman. The workers' compensation laws provide a mechanism for choosing a new primary treating physician. Rather than complying with those procedures, however, Fletcher returned to the medical office where one of the doctors had been administratively removed. The question thus presented is whether she is entitled to reimbursement for the treatment she received from doctors who were not her primary treating physician, had not been approved by Adventist, did not provide any treatment plan or medical reports, and did not consider the treatment plan provided by Dr. Wasserman.

It is true that an employer has an affirmative duty to provide medical treatment. Labor Code section 4600 provides: "Medical . . . treatment . . . shall be provided by the employer. In the case of his or her neglect or refusal reasonably to do so, the employer is liable for the reasonable expense incurred by or on behalf of the employee in providing treatment." (Lab. Code, § 4600, subd. (a).) "Upon notice of the injury, the employer must specifically instruct the employee what to do and whom to see, and if the employer fails or refuses to do so, then he loses the right to control the employee's medical

care and becomes liable for the reasonable value of self-procured medical treatment." (*Braewood Convalescent Hospital v. Workers' Comp. Appeals Bd.* (1983) 34 Cal.3d 159, 165 [193 Cal.Rptr. 157, 666 P.2d 14].)

Adventist does not argue otherwise. Indeed, in its petition for review, it reiterates its respect for Fletcher's right to designate a new primary treating physician pursuant to Labor Code section 4601. The dispute is not whether Fletcher has a right to a new physician, but whether she exercised that right according to workers' compensation laws and regulations. She did not, and her failure severely impinged on the employer's right to monitor her treatment to insure that she was receiving reasonable treatment to relieve her pain.

■ Labor Code section 4610 requires an employer to establish a "utilization review process" to determine medical necessity of treatment. (Lab. Code, § 4610, subds. (a) & (b).) As part of the comprehensive reform of the workers' compensation system in 2004, the Legislature directed "the administrative director to adopt a medical treatment utilization schedule to establish uniform guidelines for evaluating treatment requests. [Citation.] The provision further provides that this schedule shall incorporate 'evidence-based, peer-reviewed, nationally recognized standards of care' and address the 'appropriateness of all treatment procedures . . . commonly performed in workers' compensation cases.' (§ 5307.27.)" (*State Comp. Ins. Fund v. Workers' Comp. Appeals Bd.* (2008) 44 Cal.4th 230, 240 [79 Cal.Rptr.3d 171, 186 P.3d 535].) Moreover, "the statutory language indicates the Legislature intended for employers to use the utilization review process when reviewing and resolving *any and all* requests for medical treatment." (*Id.* at p. 236.)

Because Fletcher unilaterally decided to use physicians who had not been approved and who did not submit treatment plans or medical reports, Adventist was precluded from initiating the utilization review process. In the absence of a proposed treatment plan, licensed physicians would be unable to determine whether the treatment was reasonable and necessary as measured by American College of Occupational and Environmental Medicine standards through the review process. The failure is particularly problematic in this case because Dr. Wasserman recommended a change of treatment. In his report, he registered his concern that Fletcher was suffering opioid-induced hyperalgesia and recommended treatment with Suboxone. But because Drs. Malik and Rodriguez did not submit any medical reports, it is impossible to determine whether they considered Dr. Wasserman's recommended treatment and rejected it, or whether they were aware of his evaluation at all.

Thus, as Adventist points out, the very deficiency that led to Dr. Malik's removal in the first place exacerbated the problem with Fletcher's decision to return to his office for treatment. Adventist simply had no way to monitor the treatment she was receiving. The WCAB, by denying the petition for reconsideration, acted without authority when it condoned Fletcher's return to the same office that had been administratively removed. We agree with Adventist that she should not be allowed to circumvent a proper and valid order by seeking treatment with an associate as well as Dr. Malik when neither has complied with reporting requirements.

The scope of judicial review of the WCAB's decision is statutorily prescribed. Our sole obligation pursuant to Labor Code section 5952 is to review the entire record to determine whether (1) the WCAB acted without authority or in excess of its powers; (2) the order, decision, or award was procured by fraud; (3) the order, decision, or award was unreasonable; (4) the order, decision, or award was not supported by substantial evidence; or (5) the findings of fact, if made, support the order, decision, or award under review. Labor Code section 5952 does not allow us to hold a trial de novo, take evidence, or to exercise our independent judgment on the evidence. (*Slade v. Workers' Comp. Appeals Bd.* (1999) 64 Cal.Comp.Cases 597.) We do, however, consider questions of law de novo. (*Dimmig v. Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 860, 864–865 [101 Cal.Rptr. 105, 495 P.2d 433].)

■ We reject the notion that the WCAB's finding that Fletcher was entitled to reimbursement was a factual finding supported by substantial evidence and therefore impervious to appellate review. Nor is this a case in which the Legislature has accorded the WCAB broad discretion and we must defer to the exercise of discretion absent a finding of arbitrariness or capriciousness. Rather, the Legislature has created a highly regulated compensation system for injured workers with the twin goals of providing prompt medical treatment and containing costs. To achieve those statutory objectives, the WCAB must enforce the rules established by the Legislature; indeed, it is without authority to exercise discretion in the name of compassion or expediency.

The facts of this case expose the tension. Having presided over the case for years, the workers' compensation judge was well acquainted with the players in this minidrama—a frustrated, and at times difficult, worker suffering chronic pain, a litigious employer, doctors in Maryland who did not file reports, others who enraged the injured worker, and the many others who would not provide treatment to an injured worker who was covered by the California workers' compensation system. The judge attempted time and time again to resolve ongoing disputes with audacious orders, including assigning

a nurse case manager and providing psychological counseling. The WCAB rebuffed those attempts. But in this case, the WCAB overlooked the transgression by allowing reimbursement for self-procured medical expenses incurred without following the rules of the system. The WCAB, however, was without authority to do so.

That is not to say the WCAB's decision was unreasonable or unjust. Fletcher was simply reimbursed for minor expenses she incurred during the four-month period during which neither she nor Adventist was able to locate a new primary treating physician who would accept her as a patient. Nevertheless, by returning to the physician who had been administratively removed and his associate, Fletcher flaunted the administrative order. More significantly, by seeking treatment from providers who failed to submit treatment plans or medical records, Fletcher denied Adventist the ability to comply with utilization review. Moreover, as Adventist warns, Fletcher's health might have been compromised if her other physicians either were not apprised of Dr. Wasserman's concerns about her course of treatment and the need to use a new drug regimen or disregarded that advice. Again, in the absence of a treatment plan or medical reports, Adventist simply cannot monitor the treatment Fletcher is receiving. No matter how well intentioned, the WCAB is without authority to allow Fletcher to flaunt not only the administrative order, but also the rules of the workers' compensation system.

## II

Adventist also contends the WCAB was without authority to excise Dr. Wasserman's medical reports from Fletcher's medical history. We agree that based on the facts before us there is neither the statutory authority nor good cause to sanction such a novel order. Despite the judge's desire to insulate the next primary treating physician from the dispute between Fletcher and Wasserman, the physician's reports contain important diagnostic assessments and a treatment plan that should remain a part of Fletcher's medical history for all succeeding medical providers to review and evaluate.

■ Neither the judge, Adventist, nor Fletcher has cited any statutory or regulatory authority that permits the WCAB to withhold medical reports. Rather, once Fletcher gives notice that she has selected a new primary treating physician, Adventist is required to "arrange for the delivery to the selected physician or facility of all medical information relating to the claim, all X-rays and the results of all laboratory studies done in relation to the injured employee's treatment." (Cal. Code Regs., tit. 8, § 9781, subd. (d)(3).)

Dr. Wasserman's account of Fletcher's behavior at the two visits in November and December 2010 is not flattering, to say the least. By her own admission, she was angry and frustrated by the inattention and, in her view, lack of professionalism. But the reports identify serious issues with respect to her treatment, identifying opioid resistance and suggesting a treatment plan that could, in the long run, assist Fletcher in mitigating the pain. The exclusion of these reports could, as Adventist suggests, preclude new treating physicians from even considering other approaches to the treatment of the chronic pain she suffers.

In a case such as this, a patient's mental health is also very relevant to pain management. Dr. Wasserman's description of her behavior, coupled with his concern about possible depression, provides additional information about Fletcher's ability to cope with chronic pain. Certainly she will have the opportunity to contest his subjective assessment and explain to the new primary treating physician how Wasserman provoked her. But given the relevance of the information to her diagnosis and ongoing treatment, there is not good cause to allow wholesale suppression of the entire reports. Although it would be premature to opine on whether redaction of a part of a report might be possible on different facts, in this case there is simply no legal or factual basis to justify the WCAB's action.

## III

Adventist stipulated to a process to allow Fletcher to select a new primary treating physician but asks us to "acknowledge" that Dr. Wasserman will remain the primary treating physician until a new treating doctor is properly designated and established. Adventist argues that Fletcher should not be allowed to discontinue treatment with Dr. Wasserman until a new doctor is chosen. Judge Samuel was "puzzled" by Adventist's argument since "he did not make such an order." The judge reiterated his recommendation to secure a nurse case manager to expedite the process.

Frustration seeps from this record. The injured worker, the employer, and the judge have endured one fight after another, one hearing after another. The judge has attempted a variety of creative solutions to resolve the ongoing disputes. Adventist has rejected each of those solutions, and within the confines of our highly regulated system, the WCAB does not have the authority to sanction those efforts. Thus, it is up to the parties to find a new primary treating physician and to end the litigation. Since Judge Samuel did not make any orders pertaining to the retention or substitution of Dr. Wasserman, there is nothing before us on this issue to review.

## DISPOSITION

The WCAB's decision is annulled and the cause is remanded. The parties shall bear their own costs on review.

Butz, J., and Mauro, J., concurred.

On November 26, 2012, the opinion was modified to read as printed above.