Filed 11/10/25

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ILLINOIS MIDWEST INSURANCE AGENCY LLC,<br><br>    Petitioner,<br><br>    v.<br><br>WORKERS' COMPENSATION APPEALS BOARD and ORLANDO RODRIGUEZ,<br><br>    Respondents. | B344044<br><br>(W.C.A.B. No. ADJ11532204) |

        PROCEEDINGS to review a decision of the Workers' Compensation Appeals Board.  Annulled and remanded.
        Bradford & Barthel and Louis A. Larres for Petitioner.
        Anne Schmitz, Eric D. Ledger, and Shiloh Rasmusson for Respondent Workers' Compensation Appeals Board.
        Tina Odjaghian Law Group, Tina B. Odjaghian and Michelle Almary for Respondent Orlando Rodriguez.

_____

This petition concerns the jurisdiction of the Workers' Compensation Appeals Board (WCAB) to resolve disputes over medical necessity determinations when a worker requires a particular treatment for an extended period of time. Legislative reforms to the workers' compensation system were enacted in 2004 and 2013 to ensure that when disputes arise over whether a requested medical treatment should be provided, medical professionals make medical necessity determinations, rather than the WCAB or a higher court. We conclude that there is no exception to the statutorily mandated dispute resolution procedures for ongoing or continual treatment. We reject _Patterson v. The Oaks Farm_ (2014) 79 Cal.Comp.Cases 910 (_Patterson_) to the extent it set forth a contrary rule for injuries or medical necessity determinations arising after the 2013 reforms. When a request for authorization of treatment is submitted and there is a dispute over whether the requested treatment is medically necessary, that dispute must be resolved through the utilization review and independent medical review processes, rather than in an extra-statutory proceeding before the WCAB.

## FACTUAL AND PROCEDURAL BACKGROUND

### _The Underlying Workers' Compensation Claim_

In November 2016, Orlando Rodriguez sustained significant head and brain injuries while working as a mechanic for Managed Mobile, Inc. The employer's insurer, Procentury Insurance Company, administered by Illinois Midwest Insurance Agency (Illinois Midwest), admitted that Rodriguez's injuries were industrial, arising out of and occurring in the course of his employment. In September 2018, Rodriguez's primary treating

2

physician, Yong Lee, M.D., began requesting that Rodriguez receive home health care services in six-week increments.

From September 27, 2018, through August 15, 2019, Illinois Midwest approved at least eight different requests for authorization of home health care. While a claims adjuster approved some of the requests, Illinois Midwest authorized several others only after sending them to utilization review. As discussed in greater detail below, utilization review is a statutorily mandated workers' compensation procedure in which medical professionals determine the medical necessity of a requested medical treatment when an employer objects to the request. (Lab. Code, § 4610, subd. (g)(2)(A).)[1]

Illinois Midwest sent Dr. Lee's September 12, 2019 request for authorization of home health care services to utilization review. On September 19, 2019, the utilization review physician denied the request for authorization. The decision was mailed to Dr. Lee, Rodriguez, and Rodriguez's counsel on September 19, 2019. The decision was also faxed to Rodriguez's counsel on September 19, 2019, and to Dr. Lee on September 20, 2019.

***Proceedings Before the Workers' Compensation Judge***

Rodriguez challenged the utilization review denial by seeking an expedited hearing before a workers' compensation judge. On March 2, 2020, the workers' compensation judge found that Rodriguez was entitled to the ongoing home health care services Dr. Lee requested. The judge concluded that because the evidence established Rodriguez had an "ongoing and constant need for home health care," Illinois Midwest could not terminate the treatment without "a showing of substantive medical

---

[1]     All further undesignated statutory references are to the Labor Code.

3

evidence" that there was a change in Rodriguez's condition. The judge found Illinois Midwest had not made such a showing. Further, the judge concluded that although the utilization review decision was timely, it was "moot," and since the need for home health care was ongoing, the WCAB had jurisdiction over the issue. The workers' compensation judge's ruling relied on *Patterson*, a non-binding Appeals Board "significant panel" decision.[2]

Illinois Midwest filed a petition for reconsideration on March 20, 2020. The petition requested reversal of the workers' compensation judge's findings that the WCAB had jurisdiction over the dispute, that Illinois Midwest did not produce substantive medical evidence of a change of condition, and that Rodriguez was entitled to home health care.

The workers' compensation judge recommended that reconsideration be denied.

### The Appeals Board's Opinion

On January 3, 2025, the Appeals Board issued an opinion and decision after reconsideration affirming the workers'

---

[2]      We use the term "the WCAB" to refer to the Workers' Compensation Appeals Board generally, including the workers' compensation judge, and "Appeals Board" to refer specifically to the appellate judicial tribunal within the WCAB.

Only en banc decisions of the Appeals Board are binding on future Appeals Board panels and workers' compensation judges "as legal precedent under the principle of *stare decisis*." (Cal. Code Regs., tit. 8 (Board Rules), § 10325, subd. (a).) "Significant panel decisions of the Appeals Board involve an issue of general interest to the workers' compensation community but are not binding precedent." (*Id*., subd. (b).)

4

compensation judge's decision.[3]  Relying on *Patterson*, the Appeals Board found that Rodriguez's home health care services were determined to be medically necessary, and that Illinois Midwest authorized the treatment pursuant to section 4600, subdivision (a).  As a result, "any change to the established need for medical treatment would necessarily involve a change in applicant's condition or circumstance, such that a renewed review of the medical necessity of the requested treatment was appropriate and indicated."  The Appeals Board agreed with the workers' compensation judge that Illinois Midwest had not carried its burden of proof to show such a change in Rodriguez's condition.  The decision suggested the Second District Court of Appeal had approved of the *Patterson* reasoning, including the conclusion that "where a medical treatment authorized pursuant to section 4600(a) is determined to be medically necessary, [the employer] is obligated to continue providing that treatment until such time as there is a material change in circumstance. . . .  [The employer] cannot shift its burden onto [the worker] by requiring a new [request for authorization] and starting the process over again."

We granted Illinois Midwest's petition for a writ of review.

## DISCUSSION

Illinois Midwest contends the Appeals Board has adopted a position that is inconsistent with the statutory process, namely that the WCAB has jurisdiction to decide whether ongoing medical treatment continues to be medically necessary.  The petition therefore asserts that the Appeals Board's award of

---

[3]     Aside from documenting a brief closure of the WCAB offices during the COVID-19 pandemic, the record does not provide an explanation for this almost five-year delay.

5

ongoing medical treatment was in excess of its jurisdiction and that its reliance on *Patterson* violated the legislative intent of section 4610. We agree.

## I. The Statutory Scheme

### A. Medical Treatment

An employer is responsible for providing an injured worker with any medical treatment or related care that is reasonably required to cure or relieve the effects of the injury. (§ 4600, subd. (a).) "The right to workers' compensation benefits is entirely statutory." (*Stevens v. Workers' Comp. Appeals Bd.* (2015) 241 Cal.App.4th 1074, 1087 (*Stevens*).) In 2004 and 2013, legislative reforms significantly changed how workers' requests for treatment are considered, and the process for employers and workers to challenge adverse decisions about the medical necessity of specific treatments.

As the court summarized in *Stevens*, "Before 2004, an employer's obligation to cover an injured worker's medical treatment was largely in the hands of the worker's treating physician. '[T]here were no uniform medical treatment guidelines in effect' to instruct the treating physician, and there was a rebuttable presumption that the physician's determinations were correct. (*State Comp. Ins. Fund v. Workers' Comp. Appeals Bd.* (2008) 44 Cal.4th 230, 238 (*Sandhagen*).) Back then, if an employer wanted to challenge a treating physician's recommendation, its only recourse was through a 'cumbersome, lengthy, and potentially costly' dispute resolution process. (*Ibid.*) Generally, this process required the parties either to stipulate to an agreed-upon medical evaluator or to propose alternative medical evaluators and, if a dispute remained after the evaluations were completed, to litigate their dispute

6

before a workers' compensation judge. (*Id*. at pp. 238–239.) Under the former process, both the worker and the employer could challenge adverse medical-necessity determinations, and the criteria by which those determinations were evaluated depended on the quantity and quality of the expert evidence presented by the parties. A party dissatisfied with the workers' compensation judge's decision could then appeal it to the Board, which could assess the evidence and make factual determinations different from those made by the judge." (*Stevens*, *supra*, 241 Cal.App.4th at p. 1088.)

The legislative reforms that went into effect in 2004 concerned "the standards used in evaluating medical treatment requests" and "alterations to the process for resolving the treatment requests." (*Sandhagen*, *supra*, 44 Cal.4th at p. 240.) The legislative reform was "aimed at controlling skyrocketing costs while simultaneously ensuring workers' access to prompt, quality, standardized medical care." (*Id*. at p. 243.) With respect to medical treatment standards, Senate Bill No. 228 (2003–2004 Reg. Sess.) (Senate Bill No. 228) added section 5307.27, "directing the administrative director to adopt a medical treatment utilization schedule to establish uniform guidelines for evaluating treatment requests. (Stats. 2003, ch. 639, § 41.)" (*Sandhagen*, at p. 240.)

The resulting Medical Treatment Utilization Schedule (MTUS) incorporated evidence-based, peer-reviewed, nationally recognized standards of care that address the frequency, duration, intensity, and appropriateness of all treatment procedures and modalities commonly performed in workers' compensation cases. (§ 5307.27; Board Rules, § 9792.20 et seq.) Senate Bill No. 899 (2003–2004 Reg. Sess.) (Senate Bill No. 899)

7

likewise amended section 4600 to define "medical treatment that is reasonably required to cure or relieve . . . the effects of the worker's injury" as treatment based on the MTUS. (§ 4600, subd. (b); *Sandhagen*, *supra*, 44 Cal.4th at p. 242.)

Senate Bill No. 899 also amended section 3202.5 to underscore that all parties, including injured workers, must meet the evidentiary burden of proof on all issues by a preponderance of the evidence. (Stats. 2004, ch. 34, § 9.) "Accordingly, notwithstanding whatever an employer does (or does not do), an injured employee must still prove that the sought treatment is medically reasonable and necessary. That means demonstrating that the treatment request is consistent with the uniform guidelines (§ 4600, subd. (b)) or, alternatively, rebutting the application of the guidelines with a preponderance of scientific medical evidence (§ 4604.5)." (*Sandhagen*, *supra*, 44 Cal.4th at p. 242.)

### B.     Utilization Review

Before 2004, section 4062 allowed either party to object to a physician's medical treatment recommendation. As noted above, any dispute was resolved through a comprehensive medical evaluation by a medical evaluator. (§ 4062, subd. (a), eff. through Apr. 18, 2004.) In 2004, Senate Bill No. 228 required every employer to establish a utilization review process to streamline the procedure for resolving medical treatment requests and to control costs. (*Stevens*, *supra*, 241 Cal.App.4th at p. 1088.) Under the utilization review process, a claims administrator may approve medical treatment, but only a medical expert is authorized to modify, delay or deny a physician's request for authorization of treatment. (*Id*. at pp. 1088–1089; § 4610.)

8

"If the treatment request is straightforward and uncontroversial, the employer [or a claims administrator] can quickly approve the request—utilization review is completed without any need for additional medical review of the request.  If the request is more complicated, the employer can forward the request to its utilization review doctor for review, since the statute requires that the employer seek a medical opinion before modifying, delaying, or denying an employee's request for medical treatment. . . .  This ensures that a physician, rather than a claims adjuster with no medical training, makes the decision to deny, delay, or modify treatment."  (*Sandhagen*, *supra*, 44 Cal.4th at p. 241.)  Utilization review of a request for treatment must be completed and communicated within statutorily mandated timelines.  (§ 4610, subd. (i); see also Board Rules, § 9792.9.1, subd. (c).)

C.    **Dispute Resolution by Independent Medical Review**

After the utilization review process was established, an employer could no longer use the former section 4062 procedure to object to or deny an employee's request for treatment unless liability was disputed.  An employer also could not contest a utilization review determination.  But the statutory scheme continued to permit workers to use the former section 4062 process to challenge an adverse utilization review determination. (*Sandhagen*, *supra*, 44 Cal.4th at p. 244; former § 4610, subd. (g)(3)(A), eff. Jan. 1, 2004 to Dec. 31, 2012.)  If either party was dissatisfied with the workers' compensation judge's decision in that process, that party was permitted to seek reconsideration by the Appeals Board and further review in the Court of Appeal. (§§ 5900, subd. (a), 5950.)

9

Effective 2013, Senate Bill No. 863 (2011–2012 Reg. Sess.) (Senate Bill No. 863) amended the procedure for resolving medical necessity disputes after a utilization review decision. (Stats. 2012, ch. 363.)  The Legislature expressly found that "the current system of resolving disputes over the medical necessity of requested treatment is costly, time consuming, and does not uniformly result in the provision of treatment that adheres to the highest standards of evidence-based medicine, adversely affecting the health and safety of workers injured in the course of employment."  (*Id*., § 1, subd. (d).)  The Legislature also found that "having medical professionals ultimately determine the necessity of requested treatment furthers the social policy of this state in reference to using evidence-based medicine to provide injured workers with the highest quality of medical care and that the provision of the act establishing independent medical review are necessary to implement that policy."  (*Id*., § 1, subd. (e).)

The Legislature established independent medical review as a dispute resolution process that would be "more expeditious, more economical, and more scientifically sound than the existing function of medical necessity determinations performed by qualified medical evaluators appointed pursuant to Section 139.2 of the Labor Code."  (Stats. 2012, ch. 363, § 1, subd. (f).)

Under the new procedure, any dispute over a utilization review decision regarding treatment for an injury occurring on or after January 1, 2013, or that is communicated on or after July 1, 2013, regardless of the date of injury, must be reviewed or appealed through the independent medical review process. (§ 4610.5, subd. (a)(1), (2).)  "A [utilization review] decision favoring the worker becomes final, and the employer is not permitted to challenge it."  (*Stevens*, *supra*, 241 Cal.App.4th at

10

p. 1090.)  But when the utilization review decision modifies, delays or denies a request for authorization of treatment, independent medical review is generally the only way for the worker to obtain review of the decision.[4]  (*Stevens*, at p. 1090.)  Independent medical review is limited to an examination of the medical necessity of the disputed medical treatment.  (§ 4610.6, subd. (a).)  The review "is performed by an independent organization using medical professionals to perform the review.  (§ 139.5, subd. (d)(4).)  Independent medical review organizations are under contract with the administrative director of the Division of Workers' Compensation.  (§ 139.5, subd. (a)(1).)  The organizations must be independent of any workers' compensation insurer or workers' compensation claims administrator doing business in California.  (*Ibid*.)  The medical professionals performing the review must be licensed physicians knowledgeable in the treatment of the employee's medical condition.  (§ 139.5, subd. (d)(4) & (4)(A).)"  (*Ramirez*, *supra*, 10 Cal.App.5th at p. 214.)

---

[4]  There are two recognized situations in which independent medical review may not be an exclusive remedy.  First, "[i]f the Board determines that a utilization review decision is untimely, the Board may determine the medical necessity of the proposed treatment based on substantial medical evidence."  (*Ramirez v. Workers' Comp. Appeals Bd.* (2017) 10 Cal.App.5th 205, 222 (*Ramirez*), citing *Dubon v. World Restoration, Inc.* (2014) 79 Cal.Comp.Cases 1298, 1312.)  Second, the parties may stipulate to resolve disputes outside of the otherwise mandated statutory review process.  (*Allied Signal Aerospace v. Workers' Comp. Appeals Bd.* (2019) 35 Cal.App.5th 1077, 1081.)  Neither circumstance is present here.

11

An independent medical review determination is deemed the determination of the administrative director and is binding on all parties.  (§ 4610.6, subd. (g).)  Any party may appeal the independent medical review decision to the Appeals Board, but only on limited grounds.  (*Id*., subd. (h).)  The enumerated bases for appeal are all nonmedical issues: "(1) [t]he administrative director acted without or in excess of the administrative director's powers[,] [¶] (2) [t]he determination . . . was procured by fraud[,] [¶] (3) [t]he independent medical reviewer was subject to a material conflict of interest that is in violation of Section 139.5[,] [¶] (4) [t]he determination was the result of bias on the basis of race, national origin, ethnic group identification, religion, age, sex, sexual orientation, color, or disability[, or] [¶] (5) [t]he determination was the result of a plainly erroneous express or implied finding of fact, provided that the mistake of fact is a matter of ordinary knowledge based on the information submitted for review pursuant to Section 4610.5 and not a matter that is subject to expert opinion."  (*Ibid*.)

If the Appeals Board reverses the administrative director's determination, the dispute is remanded for a new independent medical review by a different organization.  (§ 4610.6, subd. (i).)  Consistent with the legislative purpose of ensuring that only medical professionals make decisions regarding the medical necessity of treatment, section 4610.6, subdivision (i) provides: "In no event shall a workers' compensation administrative law judge, the appeals board, or any higher court make a determination of medical necessity contrary to the determination of the independent medical review organization."

Once a utilization review decision modifying or denying a recommended treatment becomes final, either through independent medical review or a worker's decision not to seek review, such a decision "shall remain effective for 12 months from the date of the decision without further action by the employer with regard to a further recommendation by the same physician, or another physician within the requesting physician's practice group, for the same treatment unless the further recommendation is supported by a documented change in the facts material to the basis of the utilization review decision." (§ 4610, subd. (k).) Section 4610, subdivision (k) was enacted in 2013 pursuant to Senate Bill No. 863, originally as subdivision (g)(6) (eff. Jan. 1, 2013 to Dec. 31, 2016), but remains substantively unchanged except to exclude a utilization review decision delaying recommended treatment (former § 4610, subd. (g)(6), eff. Jan. 1, 2017 to Dec. 31, 2017). (§ 4610, subd. (k).)

## II. Statutory Construction and Standard of Review

The parties' dispute requires us to determine how the above-described statutory provisions apply in the context of ongoing treatment. "A fundamental rule of statutory construction is that a court should ascertain the intent of the Legislature so as to effectuate the purpose of the law." (*DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 387 (*DuBois*).) In interpreting a statute, the text of the statutory language is typically the best and most reliable indicator of the Legislature's intended purpose. (*Larkin v. Workers' Comp. Appeals Bd.* (2015) 62 Cal.4th 152, 157.) "When the language is clear and there is no uncertainty as to the legislative intent, we look no further and simply enforce the statute according to its terms." (*DuBois*, at pp. 387–388.)

13

" '[T]he Board has extensive expertise in interpreting and applying the workers' compensation scheme. Consequently, we give weight to its interpretations of workers' compensation statutes unless they are clearly erroneous or unauthorized.' [Citation.]" (*Valdez v. Workers' Comp. Appeals Bd.* (2013) 57 Cal.4th 1231, 1239.) "Ultimately, of course, our fidelity must be to the legislative intent as best shown by the Legislature's use of clear and unambiguous statutory language." (*Honeywell v. Workers' Comp. Appeals Bd.* (2005) 35 Cal.4th 24, 34.)

## III. The WCAB Did Not Have Jurisdiction To Resolve a Dispute About the Medical Necessity of Home Health Care Services for Rodriguez

Section 4610.5 expressly applies to any dispute over a utilization review decision "regarding treatment for an injury occurring on or after January 1, 2013," or "if the decision is communicated to the requesting physician on or after July 1, 2013, regardless of the date of injury." (*Id.*, subd. (a)(1), (2).) "A dispute described in subdivision (a) shall be resolved only in accordance with this section." (*Id.*, subd. (b).) "A utilization review decision may be reviewed or appealed only by independent medical review pursuant to this section." (*Id.*, subd. (e).)

The language of section 4610.5 is unambiguous and applies to Rodriguez's November 11, 2016 injury and the September 19, 2019 utilization review denial of Dr. Lee's request for authorization for home health care. Subdivision (e) irrefutably states that independent medical review is the only means of review or appeal of a utilization review decision. The WCAB did not have jurisdiction to resolve a dispute over the utilization review denial.

14

IV. **The WCAB's Application of *Patterson* is Inconsistent with the Statutorily Mandated Process for Review of Medical Necessity Determinations**

Despite the language of section 4610.5, the workers' compensation judge and the Appeals Board interpreted *Patterson* as setting forth an exception to the exclusivity of utilization review and independent medical review when an employer seeks to deny a form of ongoing, continual treatment that the employer has previously authorized. On this basis, both the judge and the Appeals Board exercised jurisdiction over the parties' dispute. Respondents take the same position in this proceeding. We conclude the WCAB's reliance on *Patterson* was misplaced. *Patterson* is distinguishable from the case at bar. Further, to the extent *Patterson* announced a general exception to utilization review and independent medical review procedures for "ongoing" or "continual" treatment, we reject the decision's reasoning as inconsistent with the statutory framework.

A. **The *Patterson* decision**

In *Patterson*, a worker was seriously injured on the job in 1999. (*Patterson*, *supra*, 79 Cal.Comp.Cases at p. 912.) The employer authorized nurse case manager services. (*Ibid*.) Sometime later, the employer unilaterally terminated the services. (*Ibid*.) In 2012, the worker challenged the decision by seeking an expedited hearing before a workers' compensation judge. Initially, the employer objected to the request for a hearing on the ground that a nurse case manager was currently authorized to provide services, but the employee was " 'difficult to deal with,' " resulting in frequent disputes between the worker and the nurse case managers assigned to assist her. (*Id*. at p. 913, italics omitted; see *id*. at p. 912.) The employer did not

15

assert that nurse case manager services were no longer medically necessary.  (*Id*. at p. 912.)  Eventually, the parties agreed that the worker could file another application for an expedited hearing.

The workers' compensation judge determined that nurse case manager services were part of the delivery of treatment and were necessary to the process of curing or relieving the effects of the industrial injury.  (*Patterson*, *supra*, 79 Cal.Comp.Cases at p. 915.)  The judge also ruled that the worker was not required to secure a request for authorization from the treating physician to be evaluated through utilization review, then independent medical review, to obtain " 'the [nurse case manager] services already found necessary by the [agreed medical evaluator].' " (*Ibid*.)  The employer sought reconsideration by the Appeals Board.

The Appeals Board similarly concluded that the employer could not "unilaterally cease to provide" the medical care at issue "when there is no evidence of a change in the employee's circumstances or condition showing that the services are no longer reasonably required to cure or relieve the injured worker from the effects of the industrial injury." (*Patterson*, *supra*, 79 Cal.Comp.Cases at p. 911.)  The Appeals Board reasoned that once the employer acknowledged the reasonableness and necessity of nurse case manager services when it first authorized the treatment, the worker no longer had the burden of proving ongoing reasonableness and necessity.  (*Id*. at p. 918.)  "Rather, it is defendant's burden to show that the continued provision of the services is no longer reasonably required because of a change in applicant's condition or circumstances.  Defendant cannot shift

16

its burden onto applicant by requiring a new Request for Authorization and starting the process over again." (*Ibid*.)

In this case, the Appeals Board implicitly construed *Patterson* as determining the WCAB has jurisdiction to review an adverse medical necessity determination that involves ongoing treatment, even when that determination is the result of utilization review and would otherwise be subject to independent medical review. The Appeals Board also relied on *Patterson* for the proposition that when an employer authorizes some form of treatment that will be "ongoing" or "continual," a further request for authorization of treatment is not necessary and, accordingly, the employer may not make use of the utilization review process. Neither conclusion is consistent with the relevant statutory provisions.

## B.     *Patterson* did not involve a treatment request that proceeded to utilization review and the decision is therefore inapposite

With respect to the WCAB's jurisdiction to review adverse medical necessity determinations, *Patterson* concerned a scenario that is entirely distinct from the factual history in this case. As a result, the reasoning of the decision is neither instructive nor persuasive.

In *Patterson*, the worker's injury and the employer's denial of treatment occurred before independent medical review became the exclusive path for challenging a utilization review decision in 2013. Section 4610.5 did not apply to the *Patterson* parties' dispute. In addition, it is unclear whether the worker requested nurse case manager services before the utilization review process went into effect in 2004. But even if there was a request for treatment after 2004, the Appeals Board described the employer's

17

action as unilaterally terminating an authorization for treatment that was apparently open-ended, or the termination occurred before the authorization period expired.  As a result, the WCAB considered whether a *new* request for authorization was necessary to enable the worker to challenge the termination of the previously authorized services.  There also was no dispute that the nurse case manager services were medically reasonable and necessary.  The employer's only reason for terminating the services was nonmedical, specifically that the injured worker was purportedly " 'difficult to deal with.' " (*Patterson*, *supra*, 79 Cal.Comp.Cases at p. 913, italics omitted; see *id*. at p. 912.)  The Appeals Board in *Patterson* was not confronted with the question of whether the WCAB would have jurisdiction over an adverse *medical necessity* determination, made by a medical professional, in a statutorily mandated utilization review process.

In contrast, both Rodriguez's injury and Illinois Midwest's denial of treatment occurred after 2013.  Section 4610.5 squarely applied.  Further, each authorization Dr. Lee submitted requested authorization for only six weeks of home health care services.  Thus, in September 2019, he submitted a new request for authorization of additional home health care services.  This triggered the statutorily mandated utilization review and independent medical review processes.  The employer's termination of services in *Patterson* did not occur through the utilization review process.  To the extent *Patterson* implicitly concluded that the WCAB has jurisdiction to resolve a dispute over a medical necessity determination that has progressed through utilization review, that holding cannot survive the enactment of section 4610.5.  The WCAB improperly relied on *Patterson* as authority for the WCAB's assertion of jurisdiction

18

over a dispute following an adverse utilization review determination.

### C. The WCAB's interpretation of *Patterson* as creating an "ongoing treatment" exception to utilization review is inconsistent with current law

Respondents argue that, notwithstanding Dr. Lee's submission of a request for authorization and sections 4610 and 4610.5, under *Patterson*, a request for authorization of the ongoing home health care services was unnecessary. They contend Illinois Midwest therefore could not use the utilization review process to obtain an adverse medical necessity determination, and the WCAB was not divested of jurisdiction to resolve a dispute about the medical necessity of the requested treatment. In answer to the petition, the Appeals Board argues that once Illinois Midwest found the treatment "reasonable and necessary," it could not "place arbitrary time limits on the authorization of treatment" and "may not unilaterally cease provision of ongoing medical treatment and may not resubmit the need for continuing treatment to utilization review absent a material change in fact."

The only direct authority the Appeals Board cites to support its position is *Patterson*. Rodriguez relies on *Patterson* and numerous non-binding Appeals Board decisions that have followed *Patterson*'s reasoning. Yet, as described above, *Patterson* is factually inapposite and considered a pre-2013 injury and denial of treatment not subject to section 4610.5. Even assuming *Patterson* was correctly decided on its own facts, the decision cannot be extended to mean that for a post-2013 injury, once an employer approves one request for authorization of a

19

treatment that may be required for an extended period of time, the matter falls entirely outside of the current statutory framework that contemplates a request for authorization, utilization review, and independent medical review.

Under respondents' theory, the WCAB would have jurisdiction to determine when ongoing treatment should be terminated even if a dispute about the propriety of such care arises through the utilization review process after 2012. Respondents provide no statutory authority for such an exception, and we conclude there is none. The entire statutory framework evinces a clear legislative purpose: to remove medical necessity determinations from the WCAB and courts and to place such decisions exclusively in the hands of medical professionals. The Appeals Board's application of *Patterson* directly contradicts that legislative goal.

Respondents argue that the rationale of section 4610, subdivision (k), should be applied to approvals of medical treatment. They assert an approval of treatment would accordingly remain effective for at least 12 months (as respondent Rodriguez argues), or indefinitely (as the Appeals Board argues), unless there is a showing of changed circumstances. Yet, the plain language of section 4610, subdivision (k) applies the 12-month effective date only to utilization review decisions to deny or modify treatment recommendations.

Respondents urge that reading "approvals" into section 4610, subdivision (k) is necessary to prevent an employer from repeatedly challenging treatment through utilization review until there is a decision favorable to the employer. However, " 'the judicial role in a democratic society is fundamentally to

20

interpret laws, not to write them. The latter power belongs primarily to the people and the political branches of government . . . .' . . . 'This court has no power to rewrite the statute so as to make it conform to a presumed intention which is not expressed.' [Citations.]" (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 633.) Nothing in section 4610, subdivision (k) indicates an intention to extend a treatment's approval beyond the duration requested by the treating physician. To construe section 4610, subdivision (k) as reflecting such an intent would conflict with both the statute's plain language and other provisions indicating the duration of treatment is to be determined by a worker's physician, consistent with MTUS.

Indeed, as it relates to home health care assistance, the ongoing treatment exception the Appeals Board has adopted is inconsistent with MTUS, the guidelines which, by law, govern medical necessity determinations. The guidelines for traumatic brain injuries refer to the "Initial Approaches to Treatment" guideline, which expressly address home health care services. The guidelines recommend that as to frequency, dose, or duration of home health care services: "Frequency is individualized by the provider's assessment and evaluation of the patient's healthcare needs and is detailed in a treatment plan. The authorization should include estimated services, hours, and duration of services on a daily/weekly basis. Reassessment of the medical necessity of the home health care services should be performed at regular intervals."[5] (Initial Approaches to Treatment, *supra*, at p. 17.)

---

[5] Initial Approaches to Treatment, American College of Occupational and Environmental Medicine (ACOEM) October 22, 2021, page 17 [adopted and incorporated into the MTUS

21

This guideline illustrates that the duration and ongoing necessity of home health care services is a medical issue, falling within the scope of what the Legislature has deemed should be determined by medical professionals, not the WCAB or higher courts. The guideline also illustrates that while home health care services may be ongoing, the MTUS anticipates regular reassessments of medical necessity. This stands in contrast to the Appeals Board's position that medical necessity is presumptively established unless and until the employer demonstrates a change in circumstances, and that reassessments otherwise fall outside of the statutory framework for medical necessity determinations.

Moreover, the Appeals Board's "ongoing" or "continuing" care exception would open the door to a large number of cases involving medical necessity determinations proceeding on an alternative, non-statutory dispute resolution path, defeating the Legislature's express goal of eliminating the "cumbersome,

pursuant to Board Rules, § 9792.22, subd. (a)(3)] (American College of Occupational and Environmental Medicine, Initial Approaches to Treatment (Oct. 22, 2021) (Initial Approaches to Treatment) <https://www.dir.ca.gov/dwc/DWCPropRegs/2021/MTUS-Evidence-Based-Update-December2021/Initial-Approaches-to-Treatment.pdf> [as of Nov. 6, 2025], archived at <https://perma.cc/8M3V-JDQZ>); Traumatic Brain Injury, ACOEM November 15, 2017, page 225 [adopted and incorporated into the MTUS pursuant to Board Rules, § 9792.24.5] (American College of Occupational and Environmental Medicine, Traumatic Brain Injury (Nov. 15, 2017) <https://www.dir.ca.gov/dwc/DWCPropRegs/MTUS-Evidence-Based-Updates/Final-Regulations/Traumatic-Brain-Injury.pdf> [as of Nov. 6, 2025], archived at <https://perma.cc/L5CD-9H4G>).

lengthy, and potentially costly process" that existed before the 2004 and 2013 legislative reforms. (*Sandhagen*, *supra*, 44 Cal.4th at p. 238.) Because there is no statutory authority for the exception the Appeals Board has adopted, there is no definition of what types of care or medical treatments fall into the category of "care of an ongoing nature." In fact, in the reconsideration decision in this case, the Appeals Board concluded, *without qualification*, that where a "medical treatment authorized pursuant to section 4600(a) is determined to be medically necessary, defendant is obligated to continue providing that treatment until such time as there is a material change in circumstance." Taken at face value, this conclusion would mean that for *any* treatment once authorized, a dispute over a future medical necessity determination would have to be resolved by the WCAB, rather than by medical professionals through the utilization review and independent medical review procedures. Had the Legislature envisioned such a significant exception to the otherwise mandatory dispute resolution processes, we expect it would have made that clear in the comprehensive amendments to the law.

A review of the express language of the statutes reveals the opposite. No statutory provision indicates that an employer may only object to a requested treatment the first time it is requested. No provision indicates that once a treatment is authorized, no further request for authorization is necessary unless the employer establishes a change in circumstances. No provision sets forth the burden shifting framework the WCAB has described for "ongoing" or "continual" treatments, even when additional requests for authorization are submitted. Further, no provision states or suggests that any one-time authorization of a

medical treatment is necessarily deemed to be of indefinite duration.  Indeed, the converse is true; the duration of treatment is to be determined, authorized, and reviewed consistent with the MTUS, and the employee continues to bear the burden of proving that the medical treatment is reasonable and necessary.

The Appeals Board also erred in construing this court's summary denials of other petitions as approval of *Patterson*.  The Appeals Board described this court's summary denial of a petition for review in *National Cement Co. v. Workers' Comp. Appeals Bd.* (*Rivota*) (2021) 86 Cal.Comp.Cases 595, as a decision that "upheld the Appeals Board's application of *Patterson* to award an applicant continued inpatient care."  Similarly, the Appeals Board's decision discussed *Los Angeles County MTA v. Workers' Comp. Appeals Bd.* (*Burton*) (2024) 89 Cal.Comp.Cases 977, noting that this court denied a petition for a writ of review.

A summary denial of a petition for judicial review of an Appeals Board ruling decides no issues and has no precedential value.  (*Ralphs Grocery Co. v. Workers' Comp. Appeals Bd.* (1995) 38 Cal.App.4th 820, 827, fn. 7; *Coltherd v. Workers' Comp. Appeals Bd.* (1990) 225 Cal.App.3d 455, 462.)  The Appeals Board incorrectly characterized a case summary of *Rivota* as the decision of this appellate court "upholding" the Appeals Board's application of *Patterson*.  No appellate court has adopted the Appeals Board's reasoning in *Patterson*, and we decline to do so here.

We acknowledge the Appeals Board's concern regarding arbitrary time limits on the authorization of treatment.  We note the case manager testimony in this case that requests for authorization "go out every six weeks which is required so that the home health care people can get paid."  However, the MTUS

guidelines regarding home health care services call for regular reassessments. The worker's treating physician is tasked with determining the appropriate duration for any medical treatment and the amount of time that should pass before the physician will reevaluate whether the treatment should continue. The MTUS guidelines contemplate that the duration of treatment will be included in the treatment plan, and, theoretically, a physician would request authorization for treatment consistent with that plan.

Even if the employer's or insurer's control of the payment process has influenced the system—an issue we do not decide and on which we express no opinion—the statutory framework does not permit the abandonment of the mandatory utilization review and independent medical review procedures as a response. There is no statutory authority for a two-prong system in which only initial requests for treatment are subject to utilization review and independent medical review, while future requests for the same treatment are exempt, allowing non-medical professionals at the WCAB or a higher court to make medical necessity determinations.[6]

---

[6] Our opinion is limited to the factual scenario presented here: the treating physician requested authorization for treatment of a specific duration, and the request was timely submitted and addressed in utilization review. We do not consider or decide whether a different analysis may apply when, for example, an employer authorizes treatment, then subsequently terminates the treatment without using the utilization review process, or when the parties stipulate to the terms of treatment and agree to forgo utilization review and independent medical review procedures.

The statutory language is explicit and unambiguous, and this court must enforce the statute according to its terms. (*DuBois*, *supra*, 5 Cal.4th at pp. 387–388.)  Irrespective of the reasons why a treating physician selects a particular duration of treatment in a request for authorization, the request is subject to utilization review if the employer objects, and to independent medical review after that.  Nothing in the statute prohibits an employer from seeking utilization review of subsequent requests for more of the same medical treatment.  This conclusion is in harmony with the statutory framework as a whole, including the 2004 enactment of the utilization review process.  The intent of the Legislature is evident in the statutory framework.  That intent was to have medical professionals decide medical issues while streamlining the process and reducing the cost for medical treatment by using MTUS and other medical evidence and standards.  The duration of treatment, and the necessity of ongoing treatment, are medical issues.  Applying the reasoning of *Patterson* to any ongoing medical treatment could ultimately expand it to all treatment under the guise of approval at some previous point in time.  Such a result would frustrate the purpose of the utilization review and independent medical review processes.

The WCAB did not have jurisdiction to review the utilization review determination denying Rodriguez home health care.  Rodriguez's remedy was to file a request for review through independent medical review, which he did not do.

26

**DISPOSITION**

The decision of the Appeals Board after reconsideration is annulled.  The matter is remanded to the Appeals Board for further proceedings consistent with this opinion.

**CERTIFIED FOR PUBLICATION**


ADAMS, J.


We concur:


EDMON, P. J.



EGERTON, J.